STATE BANK OF HARDINSBURG *v.* BROWN ET UX.

No. 23.  Argued October 16, 1942.—Decided November 16, 1942.

*Mr. Telford B. Orbison* for petitioner.

*Messrs. Samuel E. Cook* and *Ulysses S. Lesh* submitted for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The court below has construed § 75 (n) of the Bankruptcy Act[1] as bringing within the court's jurisdiction property mortgaged by the debtor as to which, after foreclosure, the debtor's equity of redemption had expired.[2] Because of conflict of decision [3] we granted certiorari.

---

[1] 11 U. S. C. § 203.

[2] 124 F. 2d 701.

[3] *Glenn* v. *Hollums,* 80 F. 2d 555; *Shreiner* v. *Farmers Trust Co.,* 91 F. 2d 606.  Compare *In re Randall,* 20 F. Supp. 470; *Buttars* v. *Utah Mortgage Loan Corp.,* 116 F. 2d 622.

Subsequent to the adoption of § 75 the respondents borrowed $2,500 from the petitioner and gave a promissory note secured by mortgage on their farm in Indiana. In a foreclosure proceeding in an Indiana state court petitioner obtained judgment November 20, 1939, ordering that the property be sold to satisfy the debt. May 25, 1940, the sheriff sold the farm to the petitioner. The respondents, who had not redeemed, filed their petition under § 75 on May 28, 1940, listing the farm in their schedules.

June 1, 1940, the sheriff executed and delivered his deed to the petitioner; and, June 30, 1940, petitioner filed, in the District Court, a motion to strike the farm from the schedules on the ground that, at the date of the petition, the respondents had no right or equity in the property as the period of redemption provided by state law expired at the time of the sheriff's sale. The court granted the motion and struck the property from the schedules. The Circuit Court of Appeals, by a divided court, reversed the judgment.

Section 75 (n), so far as pertinent, provides:

"The filing of a petition . . . praying for relief under . . . [this section] shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others . . . the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition.

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been

confirmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section."

The applicable statute of Indiana is Chapter 90 of the Acts of 1931.[4] Although this statute appears not to have been construed by the state courts, it seems plain that under its provisions a sale in foreclosure can not be had until one year after the institution of the proceedings and that a sale, then made, cuts off all equity of redemption. The court below so conceded.

The question then is, should § 75 (n) be so read that, although the debtor has no interest or equity in the land which has been sold, and is at most a trustee of the bare legal title, the land is to be drawn into the bankruptcy if the sheriff has not delivered his deed at the date of the initiation of the proceedings. The respondents insist that the section literally so provides and should be given effect accordingly. The petitioner replies that the fair meaning of the section as a whole is that only if the debtor still retains an equity of redemption does the land come under the bankruptcy jurisdiction. It adds that if the language be of doubtful import the legislative history fully supports the construction for which it contends. We hold with the petitioner.

Section 75 (n), after declaring that all the debtor's property shall come under the exclusive jurisdiction of the bankruptcy court, adds that any equity or right in such property shall be within the court's jurisdiction. It then attempts to detail such rights, by a clause opening with the phrase "including, among others, . . . the right or the equity of redemption where the period of redemption has not or had not expired, . . ." This language would seem adequate to vest in the trustee any unexpired equity of redemption and furnish the basis for dealing with the

---

[4] Burns Indiana Statutes 1933, §§ 3–1801 to 3–1809, inclusive.

property subject to such equity of redemption. Apparently out of an excess of caution the sentence then proceeds to catalog certain instances where, under state law, some act or thing has not occurred whose occurrence is essential to the termination of the equity of redemption. Thus the section proceeds "or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition." It is, of course, common knowledge that, in various states, one or other of the events mentioned is necessary finally to cut off the equity of redemption.

The second paragraph of the section merely extends the period of redemption in cases where, at the time of filing the petition, the period of redemption has not or had not expired. Here again, however, in an excess of caution, the statute provides, after mentioning the expiration of the period of redemption, "or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been confirmed, or where deed had not been delivered, the period of redemption shall be extended . . ." It seems clear that if no right of redemption exists there can be no period of redemption to extend.

A fair reading of the entire section indicates a clear intent to extend the bankruptcy jurisdiction over all property which still remains subject to redemption under state law at the time of filing the petition. The section does not evidence any intent on the part of Congress to bring back into the bankruptcy proceeding property which was once owned by the bankrupt and as to which his ownership and interest has been extinguished, unless such intent can be drawn from the provisions qualifying the general words of the section. We think that if Congress intended that a bankruptcy might reach back into the past and bring under the court's jurisdiction a former interest in

property, which, under state law, had irrevocably passed to a third person, it would have so stated in terms too clear to leave any doubt.

If it be conceded that the construction of the section is doubtful, the legislative history is overwhelmingly in support of the view we have stated.

Subsection (n) as originally enacted[5] provided that the filing of a petition under § 75 "shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court." In administering this section the federal courts held diverse views as to their power to deal with the equity of redemption of a mortgagor after foreclosure.[6] When Congress came to amend the Act to meet the decision of this court in *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, it had in mind the fact that in many states a deed of trust is used as a method of giving real estate security for loans whereunder the trustee may make a sale; that in some states the equity of redemption exists until a deed has been delivered; that in others it expires with the actual sale under foreclosure; that in others it expires when the sale has been confirmed by the court and that in some, although all of these acts have been performed, the debtor has a right to relief during a specified period after confirmation of sale, delivery of deed and entry into possession by the purchaser.[7] The Committee Reports in the House and Senate[8] with respect to the proposed amendment evince a purpose to amend the existing law so as to render it clear that, whatever the right of redemption under state law, the bankrupt and his estate were to have the benefit of that right. Referring,

---

[5] 47 Stat. 1473.

[6] See 99 A. L. R. 1390–1393.

[7] See Jones, Mortgages (8th Ed.) §§ 1695–1746; Wiltsie, Mortgage Foreclosure (5th Ed.) § 1199.

[8] H. R. Report No. 1808, 74th Cong., 1st Sess.; S. R. 985, 74th Cong., 1st Sess.

*inter alia,* to the amendments to subsection (n), the House Report states:

"These other amendments are largely clarification, and have become necessary because of the diverse rulings and holdings of the various United States district courts in the construction of section 75. Some of these courts have held that the farmer debtor could not take advantage of the act after foreclosure sale, and during the period of redemption. Some of these courts have refused to permit the farmer in that position to file his petition, although under the law of his State he was in possession, entitled to rents and profits, and in full control of the property, and could redeem it within the period allowed.

"Again, other courts have held that the farmer could not take advantage of the act during the period of moratorium established by a State, while others have held that the debtor could not take advantage of the act after sale, but prior to confirmation, although in all of these cases if the debtor had the money, and were in a position to pay, he could redeem, and save the property.

"It is clear that these courts are reasoning too technically, and have failed to carry out the intention of Congress, which was to protect the farmer's home and property, and at the same time to protect the creditor. On the other hand, other courts have held just the opposite, and have given full protection, and carried out the intent of Congress. Under this condition, we think it is admitted by all that there should be uniformity."

The language of the Senate Report goes into somewhat more detail but is of the same purport. When the amendments were before the Senate, Senator Borah, a member of the Committee, explained them to the Senate in the following language:[9]

"In the first place, however, it ought to be said that we undertook to make some amendments in section 75 before

---

[9] Cong. Rec. Vol. 79, Pt. 13, p. 13632.

we got to subsection (s). These amendments are for the purpose of clarifying section 75. Some of the courts have held that the farmer debtor could not take advantage of the act after foreclosure sale and during the period of redemption. The bill undertakes to clarify it so as to permit the farmer to take advantage of section 75 after foreclosure and during the period of redemption.

"Some of the courts also refused to permit the farmer who was in that position to file his petition, although under the law of the State he was in possession and full control of the property and could redeem it during the period of moratorium established by the States. One of the amendments to section 75 takes care of that objection which was raised by the court.

"Amended subsection (s) construes, interprets, and clarifies both subsections (n) and (o) of section 75. By reading subsections (n) and (o) as now enacted, it becomes clear that it was the intention of Congress, when it passed section 75, that the debtor and all of his property should come under the jurisdiction of the court of bankruptcy, and that the benefits of the act should extend to the farmer prior to confirmation of sale and during the period of redemption. In other words, the amendments provide that the farmer may avail himself of the act after foreclosure and during the period of redemption, and may also avail himself of the act during the period of the moratorium provided for him within the State."

The law of Indiana gives the debtor a year from the institution of foreclosure suit within which to redeem and terminates his right and interest in the property at the sale. The delivery of a deed by the sheriff, therefore, becomes a ministerial act which he can be compelled to perform.[10] Such delivery constitutes mere record evi-

---

[10] *Jessup* v. *Carey*, 61 Ind. 584, 592; *Hubble* v. *Berry*, 180 Ind. 513, 519, 103 N. E. 328; *State ex rel. Miller* v. *Bender*, 102 Ind. App. 185, 1 N. E. 2d 662.

dence of the purchaser's title which is perfect from the date of sale. As the sale cut off all rights of the debtor, § 75 (n) does not bring the property within the jurisdiction of the bankruptcy court.

The petitioner urges that the construction given the section by the court below would render it unconstitutional. The view we take of the meaning of the statute makes it unnecessary to consider this contention.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.

*Reversed.*

Mr. Justice Murphy, dissenting:

Mr. Justice Black, Mr. Justice Douglas and I cannot agree with the opinion of the Court. Section 75 (n) subjects to the exclusive jurisdiction of the bankruptcy court all property in which the petitioning farmer-debtor has any equity or right, "including, among others . . . the right or the equity of redemption where the period of redemption has not or had not expired, . . . *or* where deed had not been delivered, at the time of filing the petition." Conceding that respondents' equity of redemption was cut off under Indiana law prior to the filing of their petition, the deed had not been delivered at the time of filing. Respondents thus come within the exact terms of § 75 (n), and the property should not have been struck from their schedules.

We have said that doubts in § 75 are to be settled in the debtor's favor, and that it "must be liberally construed to give the debtor the full measure of the relief afforded by Congress, lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." *Wright* v. *Union Central Ins. Co.,* 311 U. S. 273, 279. But we are now told that the spirit and the letter of § 75 (n), especially the phrase "or where deed had not been delivered," may be disregarded upon a

"fair reading of the entire section" and a consideration of its legislative history, both of which, it is claimed, disclose that Congress did not intend the benefits of § 75 to extend beyond the expiration of the equity of redemption by force of state law, the above-quoted phrase being added, "apparently out of an excess of caution," to provide for those states in which the equity of redemption survives until the delivery of a deed. If Congress so intended, its words were poorly chosen. Congress could easily have declared that bankruptcy jurisdiction does not survive the extinguishment of the equity of redemption under state law, whether that extinguishment is accomplished by sale, confirmation, or the delivery of a deed. Instead Congress used the disjunctive "or". That Congress did not so intend is clear from the legislative history of the Act. The true Congressional purpose was "to protect the farmer's home and property, and at the same time to protect the creditor." [1] This purpose is best achieved by giving effect to the precise words of § 75 (n). The farmer is given a chance to rehabilitate himself so long as he has any vestige of a right in the property, call it "bare legal title" or what you will. The creditor is protected because the value of the property remains, under adequate safeguards provided by the Act, as security for the debt. "There is no constitutional claim of the creditor to more than that." *Wright v. Union Central Ins. Co.,* 311 U. S. 273, 278.

---

[1] H. Rep. No. 1808, 74th Cong., 1st Sess., p. 2. See also S. Rep. No. 985, 74th Cong., 1st Sess., p. 2.