### In re BLAIR.
### No. 8402.

United States District Court
E. D. Illinois.

Oct. 1, 1947.

Elmer McClain, of Lima, Ohio, and Leigh M. Kagy, of East St. Louis, Ill., for Mabel Blair, debtor.

Homer C. Coen, of Elmhurst, Ill., and McCawley Baird, of East St. Louis, Ill., for petitioner, the Rudolphi Interests.

Harvey D. McCollum, of Louisville, Ill., Conciliation Commissioner.

WHAM, District Judge.

The background of this case which is pending under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, sufficiently appears from the court's memorandum filed herein on March 24, 1947, in sustaining objections to the conciliation commissioner's report of November 13, 1946, which was in the nature of a final report. Following the filing of the aforesaid memorandum the landowner attacked the court's jurisdiction to entertain the proceeding from the beginning on two asserted grounds:

(1) That debtor did not have a property interest in the land scheduled at the time of the commencement of the proceeding, and (2) That debtor was not a "farmer" within the meaning of Section 75 of the Bankruptcy Act at the time of the commencement of the proceeding.

The court ordered testimony taken and after a hearing at which witnesses were heard and oral and written evidence offered and admitted counsel were given leave to present briefs and arguments which are now before the court. The pertinent facts seem to be as follows:

Findings of Fact

(1) On February 19, 1942, the petition and schedules were prepared by the conciliation commissioner, though the debtor was represented by her own counsel, and were by him submitted to debtor for signing. Through inadvertence she signed only the oath to the petition and to each of the schedules, none of which was notarized, but did not sign either the petition or any of the schedules. She then lodged the petition and schedules in that incomplete condition with the commissioner and paid him the proper filing fee. The commissioner, not observing that the petition and schedules were unsigned and the oaths unnotarized, received them and on March 5, 1942 mailed them in that condition to the clerk of the court with the statement in the letter of transmittal that he inclosed his personal check for $10.00, being the amount of the clerk fee advanced by the debtor. He failed to inclose his check. When the petition and schedules were received by the clerk of the court their aforesaid incomplete and unexecuted condition was observed and the failure of the conciliation commissioner to inclose the filing fee was noted. Whereupon, the petition and schedules were not filed by the clerk but were returned to the conciliation commissioner with a letter as follows:

"March 7, 1942.
"Mr. Harvey D. McCollum,
"Attorney-at-Law,
"Louisville, Illinois.
"Dear Sir:

"This will acknowledge receipt of Petitions and Schedules of Mabel Blair. It is necessary that I return the Petitions and Schedules to you, inasmuch as same have

not been signed by the Petitioner, nor has a notary seal been placed on any of the documents. You also stated in your letter that your personal check in the amount of $10.00 was enclosed. Your check, however, was not enclosed with the letter. ·

"In filing Section 75 cases, it is necessary that an Order be signed by the Court approving the filing of such cases, and shall appreciate your preparing such an order in triplicate, to be signed by Judge Wham.

"Upon receipt of Petitions and Schedules properly executed, with Order approving the filing of said bankruptcy case, together with your remittance in the amount of $10.00, we shall be pleased to file the above mentioned case.

"Yours very truly,
"D. H. Reed, (Signed)
"D. H. Reed, Clerk,
"United States District Court,
"Eastern District of Illinois."

The commissioner thereupon tried diligently to contact the debtor so as to obtain the completion of the petition and schedules but was unable to obtain her address either from her husband or from her lawyer for the reason that she was out of the state and travelling. Eventually, on June 24, 1942, a letter under date of June 22, 1942, was received by the clerk of the court from the conciliation commissioner as follows:

"June 22nd 1942.
"Re. Mabel Blair—Bkcy.

"Hon. D. H. Reed,
"Clerk U. S. Dist. Court,
"East St. Louis, Ill.

"Dear Sir;

"Due to the fact that she changed addresses several times, I was never able to catch up with her to get her to finish her Petition in accordance with your directions.

"I have just been informed by Omer Lewis of Olney, that he has finally located her and is getting the petition filled out and is mailing the same to you today. I am therefore inclosing the fee of $10. which was paid me at the time the petition was presented, which was on February 19th as shown by my record.

"I believe they want the record to show that it was filed in February or March and later the petition was amended and refiled, but they will probably tell you in their letter what is wanted. If I am to prepare the order, please advise me what is wanted and oblige.

"Yours very truly,
"H. D. McCollum" (Signed)

On June 24, 1942 the completed petition and schedules duly executed were received by the clerk from debtor's attorney, with the debtor's receipt from the conciliation commissioner dated February 19, 1942 for the $10.00 paid him as filing fee, accompanied by a letter from said attorney under date of June 22, 1942, as follows:

"June 22nd. 1942
"Clerk of U. S. District Court in Bankruptcy.
"East Saint Louis, Illinois.
"My Dear Sir:—

"Find inclosed a Farm Debtor's Petition, which speaks for itself and for some little informality, it had not been filed with you before and on the date of this Petition this party paid Harvey D. McCollum, Conciliation Commissioner, at Louisville, Illinois, the fee and told me on this date that he would send the amount to you and if he fails to do so let me know and I will send another fee myself and I want same to be filed and a Hearing on same. Thanking you in advance, I am.

"Yours respect.
"Omer E. Lewis" (Signed)

The letter from the conciliation commissioner was accompanied by the filing fee of $10 and was received in the office of the clerk on said June 24, 1942, which was the first date the filing fee had been tendered to the clerk and was the first date upon which the petition and schedules properly executed and accompanied by the filing fee had been presented to the clerk. On June 24, 1942, the clerk accepted the petition and marked it filed and presented it to the court for consideration. The court, on the same day, approved it as properly filed and ordered the matter referred to the proper conciliation commissioner. On the same day the clerk mailed

the petition and schedules to the conciliation commissioner with a letter as follows:

"June 24, 1942.
"Mr. Harvey D. McCollum,
"Attorney-at-Law,
"Louisville, Illinois.
"Dear Sir:

"The Petition and Schedules of Mabel Blair of Olney, Illinois tendered by you for filing under Section 75 of the Bankruptcy Act is acknowledged. Check in the sum of $10.00 as Clerk's deposit for costs is also acknowledged.

"The Order approving the filing of the Debtor's Petition has been signed by the Court, and the case has been filed. However, it was not possible to back date the filing of the petition, and the Order has been entered under date of June 24, 1942, and the case filed as of the same date.

"Yours very truly,
"D. H. Reed, Clerk,
"United States District Court,
"Eastern District of Illinois.
"vdr:lmc
"cc—
"Mr. Omer E. Lewis,
"Olney, Illinois."

(2) Based on the foregoing facts found by the court, the court further finds that the debtor's petition was filed in the office of the clerk of the court on June 24, 1942 and not prior thereto and that these proceedings were not instituted until June 24, 1942.

(3) The mortgage on the land described in debtor's schedule B-1, which land is here in controversy, was foreclosed in the Circuit Court of Richland County, Illinois, and the decree of foreclosure entered on December 24, 1940. The premises were sold under the decree on March 15, 1941 to Ed Rudolphi and the Certificate of Purchase was given him by the Master on the same day. The year within which the debtor retained an equity of redemption and was permitted to redeem under the statute expired March 15, 1942. The time within which creditors had a right of redemption expired on June 15, 1942. Neither the debtor nor any creditor redeemed the premises. The Master's Deed pursuant to the Certificate of Purchase was given July 9, 1942 and was filed for record on July 10, 1942.

(4) During and before 1941 the farm was producing very little in the way of income for debtor and many months before February 19, 1942, the debtor had begun absenting herself from the premises in question by far the greater portion of her time for the purpose of securing and following employment elsewhere and has continued that practice continuously from that time until the present. Beginning in 1941 she had a position that required her to travel in Michigan, Ohio, Indiana and Kentucky. When her travelling position was not available she had other employment or was otherwise engaged outside Illinois. During and since 1941 the debtor has spent comparatively little of her time on the farm and the farm has been the source of very little or no income to her. Since long before February 19, 1942, the greater portion of her income by far has been derived from employment elsewhere and that has continued to be true up to the present time. During the time the debtor has been away from the farm as aforesaid up to the present her elderly husband has made his home on the farm but neither he nor she has produced any substantial income therefrom and neither has paid anything to the conciliation commissioner for creditors. No progress whatever has been made toward rehabilitation of debtor as a farmer. During the same period the debtor has received a substantial income from other sources as the fruits of her personal efforts in activities other than farming. Within the meaning and contemplation of Section 75 of the Bankruptcy Act the debtor was not a farmer at the time she had her petition prepared by the conciliation commissioner and left it with him with the filing fee on February 19, 1942. She was not such farmer when her completed petition, accompanied by schedules duly executed and by the filing fee, was accepted and filed by the clerk of the court on June 24, 1942 and has not been such farmer at any time since the year 1941. The debtor was not personally bona fide engaged in farming for many months prior to or at any time since Feb-

908

ruary 19, 1942 in any sense referred to in said Section 75 or in paragraph r thereof. For some time before February 19, 1942 and on that date and at all times since the principal part of debtor's income has been derived from sources and activities other than farming operations.

## Conclusions of Law

(1) That debtor's petition for composition and extension of her debts which was left by her with the conciliation commissioner with the filing fee to be forwarded by him to the clerk of the court on the 19th day of February, 1942 was an incomplete and insufficient petition because not properly executed. The schedules left with the petition were incomplete and insufficient because improperly executed. The said petition and the said schedules were incomplete and insufficient when received by the clerk on March 7, 1942, and the clerk properly refused to accept the petition for filing because it was incomplete and insufficient and because it was not accompanied by the filing fee and was not accompanied by lawful and sufficient schedules, as required by General Order in Bankruptcy No. 50, 11 U.S.C.A. following section 53, covering proceedings under Section 75 of the Act.

(2) That debtor's leaving the incompleted and insufficient petition with the conciliation commissioner with the filing fee for the purpose of forwarding the same to the clerk, as set forth in the findings of fact, did not, under the provisions of paragraph n of Section 75 immediately subject the debtor and her property, including the farm in question, to the exclusive jurisdiction of the court for the reason that a petition unsigned and unverified bearing the signature of the debtor to the oath alone is not a lawful petition and is insufficient to bring the debtor and her property within the jurisdiction of the court merely by debtor's leaving it with the filing fee with the conciliation commissioner to be forwarded to the clerk of the court. If, by broad interpretation of the Act for the benefit of the debtor, it could be said the jurisdiction of the court did attach under said circumstances, such jurisdiction came

to an end when the conciliation commissioner, after having his attention directed to the incomplete and unlawful condition of the petition and schedules, though he diligently tried, was unable to communicate with the debtor due to her fault and for that reason was unable to secure the completion of the petition by her within a reasonable time thereafter and came to an end long before June 24, 1942.

(3) That this proceeding was commenced and this court's jurisdiction thereby attached on June 24, 1942.

(4) That before this proceeding was commenced on June 24, 1942 the debtor had ceased to have or own any equity of redemption or other right in said land sufficient to support a proceeding under or to entitle the debtor to proceed under said Section 75 of the Bankruptcy Act.

(5) From the facts set forth in finding of fact No. 4 it is the conclusion of the court that the debtor was not a farmer within the meaning of Section 75 of the Bankruptcy Act and particularly within the definition of a farmer as set forth in paragraph r of said section on February 19, 1942 or on June 24, 1942 and was not a farmer at the time she instituted these proceedings or at the time she filed her petition for composition or extension of her debts or at the time she filed her amended petition under paragraph s of said Section 75 or at any time after the year 1941.

(6) Because the debtor was not a farmer at any of the aforesaid times she was ineligible to receive the benefits of said Section 75 of the Bankruptcy Act or to proceed lawfully thereunder at the time her said petition was filed with the clerk of the court on June 24, 1942 or on February 19, 1942 when she left the incomplete petition with the filing fee with the conciliation commissioner and this court was without right or jurisdiction to permit her to proceed under said section on February 19, 1942, or at any time since that date and the debtor is without right and this court is without right or jurisdiction to permit her to proceed further in this court in this case under said Section 75 of the Bankruptcy Act.

(7) The debtor is without right to retain possession of the premises in question either personally or through her husband or any agent or tenant by virtue of this case or any order of this court heretofore entered. It is the duty of this court to vacate and set aside any order of injunction or otherwise which deprives or purports to deprive the owner of the land in question through the Master's Deed of possession of the land.

(8) In view of the fact that at the time this proceeding was commenced on June 24, 1942, the debtor had completely and irrecoverably lost her equity of redemption and the further period within which her creditors were entitled to redeem had expired so that the debtor had no further right in connection with the land except the bare right to remain on and use the land until the Master had performed the ministerial act of giving the holder of the Certificate of Purchase the Master's Deed to which he was then lawfully entitled, it was immaterial under the law and under the principles enunciated by the Supreme Court in State Bank of Hardinsburg v. Brown, 317 U.S. 135, 63 S.Ct. 128, 87 L.Ed. 140, that the Master's Deed was not executed and delivered until July 9, 1942.

(9) Based on the foregoing findings and conclusions it is the duty of the court to order the report of the commissioner to which objections have heretofore been sustained to be filed with the clerk and to order the dismissal of the proceeding.

### Opinion

The failure of debtor to get her petition for composition or extension on file and the proceeding commenced before June 24, 1942, is closely bound up with her conduct and activities whereby she abandoned the business of farming and ceased to be a farmer prior to the year 1942. If she had been a farmer and lived on the farm prior to and following February 19, 1942, the delay in obtaining the completion of the petition and schedules and getting them with the filing fee into the hands of the clerk would have been obviated. Having left the farm and ceased farming many months before said date she returned to this jurisdiction only for the purpose of thwarting the foreclosure proceedings by bringing herself within the protection of Section 75 as a farmer-debtor. She secured legal counsel but apparently relied upon the conciliation commissioner to prepare the petition and schedules. He prepared them properly, but she failed properly to execute them and he failed to discover that fact. She left with him the incomplete petition and schedules with the filing fee to be forwarded to the clerk. He sent the incomplete petition and schedules to the clerk but inadvertently did not send the filing fee. Under General Bankruptcy Order 50 the clerk was forbidden to accept the petition unless it was accompanied by the filing fee. Wherefore, the incomplete petition and schedules were properly returned to the conciliation commissioner to be by him returned to the clerk after completion, with the filing fee. In the meantime, the debtor had left the district to resume her employment elsewhere without having left her address with the conciliation commissioner. He tried diligently but could not locate her after the petition and schedules were returned to him for completion. Neither her attorney or her husband could or would disclose her whereabouts. Eventually, but not until June 24, 1942, and then not through the conciliation commissioner but through her attorney, the petition and schedules, properly executed, were placed in the hands of the clerk. On the same day the filing fee was forwarded by the conciliation commissioner. Then, for the first time, the petition, accompanied by both the schedules and the filing fee, was presented to the clerk for filing. Then for the first time the clerk could lawfully accept the petition for filing under said General Order 50. Prior to that time, after the original errors were discovered, due to the fact that the debtor had left the farm and district without leaving her address, the petition could not be presented to the court for approval and the proceeding could not be gotten underway. Though the conciliation commissioner may be said to have been jointly responsible with the debtor, who had her own counsel, for the improper execution and incomplete condition of the petition and schedules

when they were forwarded to the clerk in February and though the conciliation commissioner may have been wholly responsible for failing to transmit the filing fee with the incomplete petition and schedules, it was solely the fault of the debtor that the situation thus brought about could not be righted promptly after discovery.

In view of the delay of four months in getting the proceeding under way due to debtor's fault the law will not permit her, to the substantial disadvantage of the innocent landowner, to have advantage of the provision of Section 75, sub. n that the leaving of the petition with the conciliation commissioner for the purpose of forwarding to the clerk shall immediately subject the farmer and his property to the exclusive jurisdiction of the court. That jurisdiction was defeated by debtor's fault.

Under all the facts in this case it must be held that the proceeding was not commenced and the jurisdiction did not attach until June 24, 1942.

█ What property interest in the land, if any, did the debtor have on June 24, 1942, which was subject to administration under said Section 75? After expiration of both periods of redemption provided by the Illinois statute, Ill.Rev.Stat. Chap. 77, Secs. 18–20, on June 15, 1942, the debtor's title was a bare legal title defeasible by the Master's Deed and the right of the holder of the Certificate of Purchase to demand and receive a deed giving him both title and right of possession was immediate and absolute. Ill.Rev.Stat. Chap. 77, Sec. 31; Hoeffner v. Hoeffner, 389 Ill. 253, 59 N.E.2d 684. The extent to which the debtor's right of possession and use might continue after expiration of the periods of redemption was measured solely by the will of the holder of the Certificate of Purchase and the time he might take to obtain a Master's Deed. The debtor's right of possession and use was defeasible at the will of the holder of the Certificate of Purchase. It was not a right the debtor could prolong or enforce as a matter of legal or equitable right against the will of the holder of the Certificate of Purchase.

It was a passive or negative right wholly dependent upon the failure of the holder of the Certificate of Purchase to take that to which he was entitled. It was not a right which is comparable to an equity of redemption or a right to redeem or a right that required some judicial act to defeat. There was nothing left in the debtor which could be preserved or extended as a matter of legal or equitable right. Clearly, it seems to me, the debtor, under the facts in this case, had no property interest in the land scheduled on June 24, 1942 which came within the protection of said Section 75. State Bank of Hardinsburg v. Brown, supra. Clearly, it seems to me, now that all the facts are before me, the holder of the Certificate of Purchase and his successors have been wrongfully deprived of the right of possession and use of the land in question since July 9, 1942 when the Master's Deed was delivered; that the debtor and her husband have had the use of the land during that time without right under the law due to the failure of the parties concerned sooner to bring the jurisdictional facts in the case to the attention of the court.

█ Was the debtor a farmer within the meaning of Section 1(17) and Section 75 of the Bankruptcy Act at the time she commenced her proceeding herein? In view of the evidence as reflected in the findings herein it seems clear that she had ceased being primarily engaged in farming and had ceased being a bona fide farmer back in 1941, if not earlier, and that her income from farming after that time was a very minor part of her income. It would serve no useful purpose for me to detail the evidence on this phase of the case. I am convinced that she had not only given up farming before 1942 but was no longer a farmer within the meaning of Section 75 of the Bankruptcy Act and no longer entitled to have her property administered in bankruptcy under that section of the Act.

The Findings of Fact and Conclusions of Law hereinabove set forth are ordered filed herein as the findings and conclusions of the court.

The proceeding is dismissed.