**ROSS v. CAREY.**

**In re BROOME.**

**No. 12577.**

United States Court of Appeals
Fifth Circuit.

June 3, 1949.

Rehearing Denied July 6, 1949.

---

[17] Page two, col. two, lines 1-22.

Ray M. Watson, Irving E. Lewis, Miami, Fla., for appellant.

B. E. Carey, Wm. Clinton Green, Miami, Fla., for appellee.

Before HUTCHESON, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

On January 22nd, 1948, on his voluntary petition William Franklin Broome was adjudged a bankrupt, a receiver was appointed, and a stay order was granted ex parte to stop the Sheriff from executing a writ of possession against the bankrupt which issued from a State Court of Florida to enforce a sale under a decree foreclosing a mortgage on the bankrupt's home. On Janury 27, 1948, appellant Ross, the purchaser at the sale, petitioned the bankruptcy court to modify the stay order so as to permit the process of the State Court to be executed. The receiver, now trustee in bankruptcy, resisted, claiming there had been no bona fide sale of the property, but that it was had contrary to an arrangement made with one Watson by Broome, and confirmed by the State Court without notice to Broome. After a hearing the referee decided Ross was not a bona fide purchaser without notice, and that the arrangement made between Broome and Watson amounted to a loan by Watson of about $2,231 to be secured, along with $1,000 due Watson for old attorney's fees, by the mortgage in course of foreclosure; and that Watson should be protected for the $2,231 new money, but as to the old fees there was a preference which was avoided by the bankruptcy within four months; and that the stay order should be continued, and the trustee required to repay to Watson the $2,231 within twenty days. The Judge affirmed the referee and Ross appeals.

The facts plainly appearing are these: Broome's house was under a mortgage, the validity of which is not questioned. A decree of foreclosure in the State Court was rendered pro confesso Nov. 14, 1947, for $2,204.35 then due, and sale advertised for December 1, 1947. On that date Broome telephoned Watson, who was an old friend and had been Broome's lawyer in other matters, and asked him to get the sale postponed, saying he could raise the money to pay the mortgage in a few days. Watson at first refused, but finally agreed to arrange a postponement if Broome would also raise $1,000 owing Watson for back fees. Watson then made an arrangement in writing with the attorney for the mortgage creditor, whereby Watson deposited in escrow $2,231 in cash on the condition that if within three weeks the mortgage creditor should deliver to Watson a duly executed transfer to him of the note and mortgage in suit and on assignment of the decree, without recourse, and an authority for Watson or his nominee to be substituted as plaintiff, the cash should be paid over to the creditor; but if the transfer was not received within three weeks the cash to be returned to Watson. A week later, on December 8, 1947, Broome

had not raised the money as promised, and Watson wrote him this letter: ·

"Pursuant to our telephone conference one day last week and in order that there may be no misunderstanding, I may say that on Monday, December 1, 1947, at your urgent request I placed in escrow with Mr. William Muir the sum of $2,231 to prevent the sale of your property in Miami Springs, against which foreclosure proceedings were pending and on that date the property had been scheduled for sale. It was our understanding before I advanced this sum of money that within a very short time you would be able to raise the money to reimburse me the sum which I had advanced and in addition thereto would pay me the money which you owe by reason of legal services heretofore rendered in your behalf. Although you indicated that you would raise the money within a few days, I am writing to state that if you will raise this money within one month from the time I advanced it the same will be satisfactory to me. I must further state to you that the mortgage and promissory note which are being foreclosed against your property are to be assigned to me and I am to be substituted in place of the original holder thereof. Also please be advised that unless your agreement is carried out on or before January 1, 1948, it will be necessary for me to require a sale of the property as originally scheduled under the foreclosure proceedings."

Broome did not raise any money, and the property was duly sold on January sales day and the sale was confirmed January 12, 1948, to appellant Ross, for whom Watson bid in the property for $3,475. The excess above the mortgage was awarded by the court to a recorded judgment against Broome rendered in 1943; but this judgment creditor agreed to share it with Watson, who thus got $500 on his old fees while Broome got credit for the entire excess on the old judgment against him.

It may be true as the referee found that Ross is not a bona fide purchaser without notice, in that he is charged with notice of all that Watson knew in buying in the property at the sale. But since Broome had no equitable rights the question of bona fide purchaser is not involved. Had Watson bought for himself his title would have been good against Broome. The bidding was active and the property brought $3,475 which Watson paid for Ross. Watson got back out of the surplus about $500 on account of his old fee claim, but he did not get it from Broome; but from the judgment creditor to whom the court awarded the entire surplus above the mortgage. Broome thus got credit on the judgment for the entire surplus, and was not hurt by the judgment creditor turning over $500 to Watson, but was additionally benefited by the credit on Watson's claim. The trustee in bankruptcy lost nothing thereby. This matter is irrelevant to the present controversy with Ross.

█ On these facts the court erroneously concluded that Watson held a new lien against Broome, the mortgage foreclosure being superseded, so that the decision in *Bryan v. Speakman*, 5 Cir., 53 F.2d 463, which would otherwise prevent the bankruptcy court from interfering, should not apply. Watson's letter of Dec. 8 is, we think, plain and explicit as to what he was doing. It was received by Broome and not disagreed to. Watson did not lend Broome any money or take up the mortgage for Broome. He secured the delay in sale that Broome asked by offering to the mortgage creditor to buy the mortgage for himself and depositing his own money. He notified Broome that he would delay the sale till January 1st, but no longer. The sale occurred regularly and was duly confirmed on January 12th. Under Florida law Broome's right to redeem ended then. The trustee in bankruptcy took only the title and rights of Broome as of the date of the filing of the petition in bankruptcy ten days later, and therefore he has no right in this property. See *State Bank of Hardinsburg v. Brown*, 317 U.S. 135, 63 S.Ct. 128, 87 L.Ed. 140.

█ The bankruptcy court has no power in ordinary bankruptcy to interfere with the proceedings in a State court begun before bankruptcy for the foreclosure of a mortgage which is not invalidated by the bankruptcy. It cannot deprive the State court of its power to execute its process

against the mortgaged property though the mortgagor is still in possession at the date of his bankruptcy. Eyster v. Gaff, 91 U.S. 521, 23 L.Ed. 403; Bryan v. Speakman, 5 Cir., 53 F.2d 463.* Under the bankruptcy power Congress can provide for the stay of all proceedings against the estate in other courts, but it is well settled that it has not done so in ordinary bankruptcy as respects the foreclosure in State courts begun before bankruptcy of liens not invalidated thereby. In the present case the foreclosure had, as above pointed out, gone to the extent of a sale. The stay of the writ of possession ought not to be continued.

The judgment is reversed with direction to vacate the order staying the execution by the sheriff of the writ of possession.

Reversed with direction.

* See also Atlanta Flooring & Insulation Co. v. Russell, 5 Cir., 145 F.2d 493, and cases cited, especially Straton v. New, 283 U.S. 318, at page 326, 51 S.Ct. 465, 75 L.Ed. 1060, and Emil v. Hanley, 318 U.S. 515, at page 520, 63 S.Ct. 687, 87 L.Ed. 954, decided under later statutes.