**In the Matter of Clermont LOUBIER, Debtor.**

**NEW ENGLAND BANK & TRUST CO. et al., Plaintiff,**

v.

**Clermont LOUBIER, Debtor, Defendant.**

**Bankruptcy No. 2–80–00725.
Adv. No. 2–80–0314.**

United States Bankruptcy Court, D. Connecticut.

Sept. 30, 1980.

Martin W. Hoffman, Hartford, Conn., for plaintiff.

Edward M. Muska, Enfield, Conn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

The matter before the court is the resolution of a request for relief from the automatic stay imposed by 11 U.S.C. § 362.[1] The debtor–defendant, Clermont Loubier (Loubier) filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on July 11, 1980. The complainants, New England Bank and Trust Company (Bank), and Michael A. Mack, Committee of the Superior Court for the Judicial District of Tolland, Connecticut (Committee) seek relief from the automatic stay in order to complete a transaction authorized by order of the said superior court confirming a judicial sale arising out of a foreclosure action.

---

1. *Sec. 362. Automatic Stay.*

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of–

  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

  (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

  (3) any act to obtain possession of property of the estate or of property from the estate;

  (4) any act to create, perfect, or enforce any lien against property of the estate; . . .

(d) On request a party in interest and after *notice and a hearing, the court shall grant relief* from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if–

  (A) the debtor does not have an equity in such property; and

  (B) such property is not necessary to an effective reorganization.

Loubier has, in the past, acted as a building contractor. On December 6, 1978, he obtained a construction loan from the Bank and executed a mortgage on the property located in Somers, Connecticut and known as 317 Turnpike Road (property). Loubier became in default of the provisions of the mortgage deed, and the Bank, on August 11, 1979, instituted foreclosure proceedings in the Superior Court for the Judicial District of Tolland. Judgment for foreclosure by sale was entered on January 28, 1980, appointing Michael A. Mack a committee of sale, but delaying the public auction until June 7, 1980. On that date, after advertising as ordered by the superior court, the Committee received 15 bids and accepted as the highest bid an offer of $85,000 received from George A. Colli, Jr., President of Homeco, Inc. A deposit of $10,000.00 was made by Colli and a contract of sale executed by Colli and the Committee. Subsequently, on July 7, 1980, hearings were held in the superior court on a motion by Loubier to set aside the sale and a motion of the Committee to ratify and confirm the sale. The superior court (Satter, J.) denied Loubier's motion, ratified and confirmed the sale, approved the committee deed and allowed committee expenses of $5,814.00. July 14, 1980 was set by the Committee as the closing date to deliver the deed. On July 11, 1980, Loubier filed his Chapter 11 petition, and on July 29, 1980, the Bank and the Committee filed their complaint for relief from stay.

Testimony and stipulations at trial established that the debt due the Bank amounts to $68,966.16 and that interest continues to run at the rate of $20.45 per diem. The total of all encumbrances upon the property is $87,914.00. The Bank's appraiser valued the property, on which the house is 90% completed, at $90,000, while Loubier's appraiser valued the property at $118,200.00. Loubier testified he is not presently engaged in the contracting business due to an injury he received in January, 1980. The only other real property claimed by Loubier in his petition is his personal residence in South Windsor, Connecticut.

The parties concede that, although not directly raised by the complaint, a threshold issue to be determined in this proceeding is the effect of the ratification and confirmation of the foreclosure sale upon the estate's interest in the property. The Bank and the Committee argue that a judicial sale of the property was completed prior to the filing of Loubier's Chapter 11 petition, thereby terminating any equity of redemption of Lobuier, and that they are thus entitled to have the automatic stay lifted to allow the delivery of the deed and receipt of the proceeds. Loubier claims that despite the fact that the foreclosure sale by public auction was held and confirmed before he filed his petition, no deed was delivered and no money was paid, and he is thus entitled under § 362 to have the foreclosure action stayed while he, as debtor–in–possession, seeks a sale through the bankruptcy court at a price closer to what he claims the true value of the property to be.

What a debtor's estate includes is determined by § 541 of the Code, which provides in pertinent part that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Given the fact that the Bankruptcy Code of 1978 has been in effect for less than a year, there is little decisional law construing § 541. The brief explanation of the section appearing in the legislative history includes the following language:

... Thus, as section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate .... 124 Cong.Rec. H 11,096 (September 28, 1978); S 17,413 (October 6, 1978).

By extending the logic of this language, if a debtor had no interest in property at the commencement of a case (i. e., the filing of a petition), the estate would take no interest in that property. Thus, with respect to the instant proceeding, the threshold question becomes: When Loubier filed his petition, did he have an equity of redemption in the property that passed to his Chapter 11 estate? 4 *Collier on Bankruptcy* (15th ed.) ¶ 541.07 indicates that non-bankruptcy state law determines what interest a debtor has in property and that Congress has not conferred additional property rights upon the estate.

The holding of a pre–Bankruptcy Code case, *State Bank of Hardinsburg v. Brown*, 317 U.S. 135, 63 S.Ct. 128, 87 L.Ed. 140 (1942) is significant and instructive. In *Bank of Hardinsburg*, the court construed a provision of the Bankruptcy Act of 1898, § 75, which provided certain composition and extension relief to farmers. The Supreme Court held that where the redemption period under state law had expired, and a foreclosure sale had been confirmed, the rights of a mortgagor–debtor were cut off and § 75 did not bring the property within the jurisdiction of the bankruptcy court, despite the fact that the statute in its literal terms provided for extension of the redemption period "where deed had not been delivered".[2] The court observed that

> A fair reading of the entire section indicates a clear intent to extend the bankruptcy jurisdiction over all property which still remains subject to redemption under state law at the time of filing the petition. The section does not evidence any intent on the part of Congress to bring back into the bankruptcy proceeding property which was once owned by the bankrupt and as to which his ownership and interest has been extinguished, unless such intent can be drawn from the provisions qualifying the general words

of the section. We think that if Congress intended that a bankruptcy might reach back into the past and bring under the court's jurisdiction a former interest in property, which, under state law, had irrevocably passed to a third person, it would have so stated in terms too clear to leave any doubt. *Id.* at 138–39, 63 S.Ct. at 130.

See also *Jelks v. Aetna Life Ins. Co.*, 134 F.2d 870 (10th Cir. 1943); *Ross v. Carey*, 174 F.2d 872 (5th Cir. 1949).

In *Bank of Hardinburg, supra*, it was also held that where a sale has cut off a mortgagor's right to redeem property,

> delivery of a deed by the sheriff ... becomes a ministerial act which he can be compelled to perform. Such delivery constitutes mere record evidence of the purchaser's title which is perfect from the date of sale. As the sale cut off all rights of the debtor, § 75(n) does not bring the property within the jurisdiction of the bankruptcy court. *Id.* 317 U.S. at 141–42, 63 S.Ct. at 132.

■ From all of the foregoing, I conclude that the rights of Loubier in the property involved in the pre–petition state court foreclosure sale are determined by Connecticut law and that no additional property rights have been bestowed by the Bankruptcy Code.

■ I now turn to the question of what interest remains in a mortgagor, under Connecticut law, after court confirmation of a foreclosure sale, but prior to delivery of a deed. In Connecticut, the legislation provides for two methods of foreclosure, strict foreclosure and foreclosure by sale. The applicable statutes of Connecticut are as follows:

*Conn.Gen.Stat. § 49–24.*

> All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be

---

**2.** Former § 75 of the Bankruptcy Act provided in pertinent part,

In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become

absolute, or where the sale has not or had not been confirmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section.

foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending.
*Conn.Gen.Stat. § 49–25.*

When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefore, and shall direct whether the property shall be sold as a whole or in parcels, and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of the court. If they cannot agree, an amount agreed upon by a majority may be accepted by the court at its discretion, and the expense of the sale and appraisal shall be paid by the plaintiff and be taxed with the costs of the case. If, after judgment has been rendered, the amount found to be due and for which foreclosure is decreed, together with the interest and the costs, is paid to the plaintiff *before the sale*, all further proceedings in the suit shall be stayed. (Emphasis supplied.)
*Conn.Gen.Stat. § 49–26.*

When a sale has been made pursuant to a judgment therefore and ratified by the court, a conveyance of the property sold shall be executed by the person appointed to make the sale, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee or lienholder if the mortgage or lien had been foreclosed by strict foreclosure, and to this extent such conveyance shall be valid against all parties to the cause and their privies, but against no other persons, and the court may order possession of the property sold to be delivered to the purchaser.

Connecticut decisional law indicates that a judicial sale under such statutes becomes complete and creates legal rights and obligations among the parties when it is confirmed and ratified by the court. *Mariners Savings Bank v. Duca*, 98 Conn. 147, 118 A. 820 (1922); *Raymond v. Gilman*, 111 Conn. 605, 151 A. 248 (1930); See also *Melrose v. Industrial Associates, Inc.*, 136 Conn. 518, 72 A.2d 469 (1950). In *Duca*, the court held that under the Connecticut foreclosure–by–sale statutes, ratification or confirmation is the determinative element of such foreclosure.

So we see what the ratification of the sale is in a way the focal point of the proceeding after the judgment therein. As regards what has gone before it makes valid the advertisement of the sale, the proper conduct of the same pursuant to the original judgment and notice and, if such be the case, the fact of money paid into court. Regarding what follows, it fixes the various disbursements and expenses of the sale and regulates the disposal of the net proceeds among the parties thereto. It makes operative the various acts and proceedings required by the statute. The ratification or confirmation of the sale would therefore appear to be a condition precedent to any operative effect arising out of the sale. *Id.* at 153, 118 A.2d at 822.

In *Raymond, supra* 111 Conn. at 613, 151 A. at 251, the court noted that

A judicial sale is one made as a result of judicial proceedings by a person legally appointed by the court for the purpose. The court is the vendor, and the person appointed to make the sale is the mere agent of the court. The sale is not absolute until confirmed. The order of confirmation gives the judicial sanction of the court, and when made, it relates back to the time of the sale, . . . .

*Duca, supra*, further holds that default of a purchaser at a judicial sale, may, upon confirmation, give rise to a court order to the purchaser to complete payment, failure to comply with which may result in the purchaser being held in contempt. The sanction of a contempt citation emphasizes the finality with which *confirmation* of a foreclosure sale allocates legal rights and obligations under Connecticut law.

■ The court finds that in Connecticut, the law is that the rights of a mortgagor in mortgaged property are terminated by confirmation of a foreclosure sale, and that subsequent to such a sale, any interest the mortgagor may claim is in proceeds of the sale solely and not in the property. The delivery of a deed is a ministerial act only and does not constitute the event which terminates an equity of redemption. This finding leads me to conclude that in the case at bar, the court can have no jurisdiction over the property. When the foreclosure sale of June 7, 1980 was confirmed by superior court order on July 7, 1980, at that moment, Loubier's equity of redemption in the property was terminated, and his interest, if any, thereafter was in the proceeds of the sale. Loubier filed his petition commencing his case on July 11, 1980, at which time, he had no legal or equitable interest in the property. Thus, the property was not property of the estate as of the commencement of the case, and this court would have no jurisdiction to order its further disposition. See *In re Butchman*, 4 B.R. 379 (Bkrtcy., S.D.N.Y.1980). I hold that the Bank and the Committee have established cause, under the circumstances of this proceeding, pursuant to § 362(d)(1) to permit the granting of relief from stay. Judgment may enter for the complainants, the Bank and the Committee, modifying the automatic stay to permit delivery of a deed from the Committee to the Bank and receipt of proceeds by the Committee, and it is

SO ORDERED.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.