CUDAHY, Circuit Judge.
 

 The issue on appeal is whether a debt owed by Robert and Arlene Bogstad to the Production Credit Association of River Falls (“PCA”) should be discharged in a voluntary liquidation under Chapter 7 of the Bankruptcy Code (“Code”), 11 U.S.C. § 701
 
 et seq.
 
 The bankruptcy court has twice found that it should be and the district court has twice reversed. We now reverse the district court.
 

 Robert and Arlene Bogstad own a farm in Mondovi, Wisconsin. In 1980 their prospective son-in-law, Adam Mock, sought to establish a dairy farming operation on the Bogstad farm. Mock approached PCA for a loan to get his dairy started. Because Mock had no assets and his planned capital expenditures would not provide sufficient security for the loan he sought, PCA would make the loan only if it were co-signed by the Bogstads.
 

 Robert Bogstad met with a PCA loan officer in August 1980 and provided oral information about his assets and liabilities. The loan officer prepared a balance sheet for them, which Robert and Arlene Bog-stad both signed on September 12, 1980. On the strength of the Bogstad’s net worth, as shown by the balance sheet, PCA loaned Adam Mock $52,225.00.
 

 Adam Mock was not successful as a dairy farmer and in 1983 he filed a petition for voluntary liquidation under Chapter 7 of the Code. After PCA had liquidated its security with Mock, it turned to the Bog-stads to collect the balance of the debt. As a result, the Bogstads filed a Chapter 7 petition for voluntary liquidation on March 9, 1983.
 
 [1]
 
 PCA filed a complaint seeking to have its debt declared nondischargeable under Code section 523(a)(2)(B), 11 U.S.C. § 523(a)(2)(B). This section provides that a debtor will not be discharged of a debt if he has caused to be made or published, with the intent to deceive, a materially false written statement of his financial condition, which a creditor reasonably relied upon in making the loan in question.
 
 [2]
 

 The bankruptcy judge found that the Bogstads had made false statements in their PCA financial statement but, finding that PCA had not shown the statements to be
 
 materially
 
 false, he determined that the debt was dischargeable. PCA appealed
 
 *372
 
 this order to the District Court for the Western District of Wisconsin. That court reversed, holding that the financial statement was false “beyond a reasonable doubt” and remanding to the bankruptcy court for consideration of the issues of intent to deceive and reasonable reliance.
 

 On remand, the bankruptcy judge held a supplementary hearing and decided that Robert Bogstad, in giving the statement of his finances, had had the requisite intent to deceive but that Arlene Bogstad had not. But he also decided that PCA’s reliance on the financial statement was unreasonable and thus again concluded that the debt was dischargeable. PCA appealed again, and the district court, while sustaining the finding that Arlene Bogstad lacked an intent to deceive, reversed the bankruptcy judge on the question of PCA’s reliance on the financial statement, finding it reasonable.
 

 It is this last order of the district court that has been appealed to this court. Robert Bogstad contends that the district court erred in finding that PCA’s reliance was reasonable and that it also erred in its earlier determination that the balance sheet was materially false. He further asks us to review the determination that he had the requisite intent to deceive.
 
 [3]
 

 A party who seeks to establish an exception to the discharge of a debt in bankruptcy bears the burden of proof.
 
 In re Martin,
 
 698 F.2d 883, 887 (7th Cir.1983);
 
 In re Hosking,
 
 19 B.R. 891, 895 (Bankr.W.D.Wis.1982). The standard of proof is one of “clear and convincing evidence.”
 
 In re Brink,
 
 27 B.R. 377, 378 (Bankr.W.D.Wis.1983);
 
 In re Trewyn,
 
 12 B.R. 543, 545-46 (Bankr.W.D.Wis.1981). Thus, in this case, PCA bore the burden of showing by clear and convincing evidence (1) that the Bog-stad financial statement was “materially” false; (2) that Robert Bogstad made the statement with intent to deceive; and (3) that PCA “reasonably” relied upon the written statement in making the loan. If it did not prove all three of these things, the debt was properly declared dischargeable by the bankruptcy court. 11 U.S.C. § 523(a)(2)(B). Because we reverse the district court’s ruling that the financial statement was materially false, we need not reach the issues raised by the latter two requirements.
 
 [4]
 

 
 *373
 
 The bankruptcy court found that there were five false statements on the Bogstad financial statement. These were: (1) listing $11,000.00 in life insurance as an asset although, as a term policy, it had no cash value; (2) listing the barn as a thirty-cow barn although it had only twenty stalls; (3) stating that they owned four automobiles when in fact they owned three; (4) valuing recreational property in northern Wisconsin at premium rather than fair market value; and (5) omitting to include as a liability a debt owed to Clarence Williams (Robert Bogstad’s brother-in-law). Bankruptcy Findings of Fact and Conclusions of Law (January 16, 1984), 11 28. It is not, however, enough that statements on the balance sheet be proven false. The financial statement as a whole must be
 
 materially
 
 false, and the burden was on PCA to show this by clear and convincing evidence. In this regard, the bankruptcy court found that PCA had not shown by clear and convincing evidence (1) that the three cars the Bogstads actually owned were worth less than what they claimed for four; (2) that the recreational property was worth less than the $10,000.00 the Bogstads claimed; and (3) that the debt to Clarence Williams, which dated back to 1962, was a legally cognizable debt in 1980.
 
 Id.
 
 ¶ 29. Most significantly, PCA contended before the bankruptcy court that Robert Bogstad had grossly overvalued his farm when he listed it as worth $100,000.00. The bankruptcy court found that PCA had not proved this by clear and convincing evidence either.
 
 Id.
 

 Thus, a comparison of the financial statement submitted by the Bogstads and the finances that the bankruptcy court found PCA had proved at trial would look like this:
 

 
 *374
 
 ASSETS
 

 Balance Sheet, 9/12/80 Bankruptcy Court Findings
 

 Heifer 750.00 750.00
 

 Vehicles 2,650.00 (four) 2,650.00 (three) '
 

 Machinery, Equipment 6,640.00 6,640.00
 

 Farm with Barn 100,000.00 (thirty cows) 100,000.00 (twenty cows)
 

 10 acres 10,000.00 3,500.00
 
 [5]
 

 Total assets $132,740.00 $115,240.00
 

 LIABILITIES
 

 Balance Sheet, 9/12/80 Bankruptcy Court Findings
 

 Royal Credit Union 12,531.00 12,531.00
 

 Northern Investment 4,000.00 4,000.00
 

 Clarence Williams None None
 

 Total Liabilities $ 16,531.00 $ 16,531.00
 

 TOTAL OWNER EQUITY $116,209.00 $ 98,709.00
 
 [6]
 

 ASSET-EQUITY RATIO .8755 .8565
 

 Noting that John Wegmann, the PCA loan officer who had administered the Adam Mock loan, had testified that PCA would have made the loan so long as the Bogstad’s net worth was at least $58,-105.00 and their asset-equity ratio had been at least .6 or .7, the bankruptcy court concluded that the Bogstad financial statement was not materially false.
 
 Id.
 
 at ¶¶ 21, 32.
 

 The district court' reversed, finding “clearly erroneous” several of the bankruptcy court findings and holding the Bog-stad balance sheet to be materially false “beyond a reasonable doubt.” The district court re-created a balance sheet which it felt conformed to the evidence submitted at trial.
 

 Life insurance None None
 

 Livestock $ 1,200.00 1,200.00
 

 Angus Bull 500.00 500.00
 

 Heifer 750.00 750.00
 

 Vehicles 2,650.00 (three) 2,000.00 (three)
 

 Machinery, Equipment 6,640.00 6,640.00
 

 Farm with Barn 100,000.00 (twenty cows) 60,000.00 (twenty cows)
 

 10 acres 3,500.00 3,500.00
 

 Total assets $115,240.00 74,590.00
 

 LIABILITIES
 

 Royal Credit Union $ 12,531.00 12,531.00
 

 Northern Investment 4,000.00 4,000.00
 

 
 *375
 
 Clarence Williams _None_10,000.00
 

 Total Liabilities $ 16,531.00 $ 26,531.00
 

 TOTAL OWNER EQUITY , $ 98,709.00 $ 48,059.00
 

 ASSET-EQUITY RATIO .8565 .6443
 

 In re Bogstad,
 
 No. 84-C-91-S, at 5-6 (W.D.Wis. February 28, 1985).
 

 Clearly, the most significant variance between the hypothetical balance sheets created by the bankruptcy court and the district court lies in the valuation of the Bog-stad farm. The district court, in finding clearly erroneous the bankruptcy court’s findings, relied on the following evidence of the farm’s value submitted by PCA: (1) that the Bogstads had purchased the farm for $31,500.00 in 1973; (2) that a bankruptcy judge in the Bogstad’s 1983 Chapter 13 proceeding had valued the farm at $60,000; and (3) that the Bogstads had claimed that the farm was worth $50,000 in their March 1983 Chapter 7 petition. The district court found it “inconceivable” that the value of the farm had fluctuated from $31,500.00 in 1973 to $100,000.00 in 1980 and back to $50,000.00 or $60,000.00 in 1983. The district court concluded that “evidence does not exist to support” the bankruptcy court’s conclusion as to the value of the farm, as well as the findings concerning the other items in the balance sheet.
 
 Id.
 
 at 374. While it is true that no convincing evidence was presented to show the fair market value of the farm in 1980, this does not mean that the bankruptcy court was in error but rather suggests that it was correct as a matter of law. The burden was on PCA to show that the $100,000.00 figure was incorrect. Especially given the well-known volatility of farm prices and prices of farm land over the past ten years, we cannot say that the bankruptcy court was clearly erroneous in finding that PCA had failed to carry its burden in this respect.
 
 [7]
 

 Further, the bankruptcy court was correct in its conclusion that PCA was not ultimately able to show the balance sheet to be materially false. Material falsity has been defined as “an important or substantial untruth.”
 
 See, e.g., In re Mutschler,
 
 45 B.R. 482, 491 (Bankr.D.N.D.1984),
 
 In re Anderson,
 
 29 B.R. 184, 191 (Bankr.N.D. Iowa 1983);
 
 In re Magnusson,
 
 14 B.R. 662, 668 (Bankr.N.D.N.Y.1981). A recurring guidepost used by courts has been to examine whether the lender would have made the loan had he known of the debtor’s true financial condition.
 
 See, e.g., Wolfe v. TriState Insurance Co.,
 
 407 F.2d 16, 19 (10th Cir.1969);
 
 In re Barnacle,
 
 44 B.R. 50, 54 (Bankr.D.Minn.1984);
 
 In re Winfree,
 
 34 B.R. 879, 884 (Bankr.M.D.Tenn.1983);
 
 In re Hunt,
 
 30 B.R. 425, 440 (Bankr.M.D.Tenn.1983);
 
 In re Magnusson,
 
 14 B.R. 662, 668 (Bankr.N.D.N.Y.1981);
 
 cf.
 
 1 D. Cowans, Bankruptcy Law and Practice 343 (1978) (“The materiality of the omission [of a debt] is often attempted to be shown by the testimony of the lending officer that if he or she had known of the existence of the omitted debt, he would have refused to make the loan.”) Since PCA testified that it would have made the loan even had the Bogstads been worth less than what PCA was able to prove that the Bogstads were in fact worth, the bankruptcy court was entitled to find that the Bogstad financial statement had not been proved materially false. Thus, it was correct to find that the requirements for an exception to discharge under Code section 523(a)(2)(B), 11 Ú.S.C. § 523(a)(2)(B), had not been met and to declare the debt dischargeable. The judg
 
 *376
 
 ment of the district court is therefore reversed.
 

 [1]
 

 . Robert and Arlene Bogstad had filed a petition for adjustment of debt under Chapter 13 of the Code, 11 U.S.C. § 1301
 
 etseq.,
 
 on September 15, 1982. The bankruptcy court dismissed it on March 2, 1983, whereupon the Bogstads filed the Chapter 7 petition underlying this case.
 

 [2]
 

 . The relevant portion of section 523(a)(2)(B) reads:
 

 (a) A discharge ... does not discharge an individual debtor from any debt—
 

 (2) for money ... obtained by—
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s ... financial condition;
 

 (iii) on which the creditor ... reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive....
 

 [3]
 

 . PCA contends that the issue of Robert Bog-stad's intent to deceive cannot properly be raised before this court because the Bogstads did not raise it before the district court. Because we can decide this appeal solely on the issue of material falsity, we need not reach the question whether the procedural posture of this . case should create an exception (for which the Bogstads contend) to our general rule that we will not consider issues not heard in the court below.
 

 [4]
 

 . Although we will decide this case on the issue of material falsity, we think that a few words about the issue of "reasonable reliance” are in order.
 

 According to the testimony of John Weg-mann, the PCA loan officer assigned to the Bogstad-Mock Loan, PCA made the loan to Adam Mock based on the strength of Robert Bogstad’s written financial statement and the fact that "a man in our office ... seemed to know Mr. Bogstad." Transcript of Bankruptcy Court Hearing (October 4, 1983), at 25. The bankruptcy court found that this reliance by PCA on the financial statement was unreasonable because PCA did not present any evidence that it had attempted to verify any of the information that Bogstad gave it and PCA did not establish the existence of an "atmosphere of mutual trust established during an on-going relationship.” Findings of Fact and Conclusions of Law (December 4, 1984), at 8.
 

 The district court reversed, stating in part:
 

 This Court believes that in today’s less-than-candid society the failure of a lending institution to conduct a credit investigation of the applicant or to obtain an appraisal of the real estate constitutes improper internal office procedure. However, the failure of PCA to verify the assets and values does not as a matter of law render its reliance unreasonable.
 

 There is nothing in the record to indicate that PCA was aware of the applicant’s propensity to deceive. Mr. Bogstad was not clothed with a scarlet letter when making his application. Had there been evidence of applicant’s prior reputation for untruthfulness, any reliance upon Robert Bogstad’s statement without an independent investigation would, of course, have been unreasonable. In this instance the record reveals the desire of a couple with a farming background to help a young man with entry into farming. The loan officer was neither familiar with the farm or recreational lands, nor the values placed upon them by the applicant. The amounts as stated in the balance sheet result
 
 *373
 
 ed from a personal interview with the applicant Robert Bogstad, who gave no indication that he was either untruthful or interested in deceiving the lender.
 

 In re Bogstad,
 
 No. 84-C-91-S, at 4 (W.D.Wis. February 28, 1985).
 

 The question of the reasonableness of a creditor's reliance may be highly dependent on the particular facts of the lending transaction. Courts should not, however, be eager to intrude into the business practices of lending institutions. Nonetheless, the conclusion of the district court in this case makes us uneasy.
 

 There seems to be a significant difference between the on-going business relationships which, we held in
 
 In re Garman,
 
 643 F.2d 1252, 1257-59 (7th Cir.1980),
 
 cert. denied sub nom. Garman v. Northern Trust Co.,
 
 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981), and
 
 In re Kreps,
 
 700 F.2d 372, 376 (7th Cir.1981), can excuse a bank from verifying a financial statement and the absence of a "scarlet letter” on the breast of a loan applicant who is, basically, a stranger to the lender. (The fact that a man at PCA "seemed” to know Mr. Bogstad does not appear to be the sort of relationship contemplated by
 
 Garman
 
 and
 
 Kreps.)
 
 We also note that neither
 
 Garman
 
 nor
 
 Kreps
 
 involved almost necessarily arguable estimates of land values. Here land values are central.
 

 Further, we believe that the purpose of excluding from discharge debts obtained by fraud is to protect lenders from dishonest debtors. But the requirement of "reasonable” reliance added to § 523(a)(2)(B)(iii) by the 1978 Code surely does not mean that a creditor may "assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it.”
 
 In re Blatz, 27
 
 B.R. 401, 404-05 (Bankr.E.D.Wis.1984) (quoting
 
 In re Yeiser, 2
 
 B.R. 98, 101 (Bankr.M.D.Tenn.1979)). Here PCA undertook no independent verification of the proffered values of either the farm or the recreational acres. Nor did it ask Mr. Bogstad to provide any support for his figures. Indeed, it might be thought that two such round figures as $100,000 and $10,000 might have put PCA on notice, particularly if they were double and triple, respectively, fair market value, as PCA contends.
 

 In particular, representations of a landowner about the value of his real estate would seem, almost routinely to evoke skepticism. Although the court should protect lenders from unscrupulous debtors, it is not our business to bail out any lender no matter how recklessly it gives out its money.
 

 [5]
 

 . The bankruptcy court assumed for the purpose of its calculation that the recreational property was worth only $3,500.00 (the figure claimed by the Bogstads in their 1983 Chapter 7 petition), although it found that PCA had not met its burden of showing that this land was not worth $10,000 in 1980.
 
 See
 
 Bankruptcy Findings of Fact and Conclusions of Law (January 16, 1984), ¶¶ 29, 31.
 

 [6]
 

 . The bankruptcy court determined that the total owner equity was $102,709.00 (and therefore that the asset-equity ratio was .8614). Bankruptcy Findings of Fact and Conclusions of Law (January 16, 1984), ¶ 31. Since we have set up the balance sheet just as the bankruptcy court did, we can only conclude that it made an arithmetical error. In any event, the $4,000 discrepancy changes none of the conclusions about material falsity.
 
 See infra.
 

 [7]
 

 . When a district court hears an appeal from a bankruptcy court decision, it sits as an appellate court and must accept the bankruptcy court’s findings unless they are “clearly erroneous."
 
 In re Neis,
 
 723 F.2d 584, 588 (7th Cir.1983). We do not believe that the bankruptcy court was clearly erroneous in its determination that PCA had not shown by clear and convincing evidence (1) the true value of the three cars owned by the Bogstads; (2) the true value in 1980 of the northern Wisconsin acreage; and (3) that the debt to Clarence Williams was a cognizable debt in 1980, eighteen years after it was made.