**In re Carolyn ROLAND, Debtor.**

**Mahin Fazalpour
AFSHARNIA, Plaintiff,**

**v.**

**Carolyn ROLAND, Defendant.**

**Bankruptcy No. 5–83–00816.
Adv. No. 5–86–0042.**

United States Bankruptcy Court,
D. Connecticut.

Oct. 22, 1986.

Carolyn Richter, Stamford, Conn., for plaintiff.

Seymour N. Weinstein, Stamford, Conn., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON DISCHARGEABILITY OF DEBT UNDER CODE SECTION 523(a)(2)(B)

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff in this adversary proceeding seeks a determination under Code § 523(a)(2)(B)[1] that a debt scheduled in the debtor's Chapter 7 petition is not dischargeable. The debtor/defendant has denied the material allegations of the plaintiff's complaint. The facts necessary for an analysis and determination of the issues raised by the pleadings follow.

### BACKGROUND

In November, 1979, the plaintiff gave her husband, Asghar Afsharnia ("Afsharnia") written power of attorney to manage her assets which were commingled with his in family bank accounts. At the time the disputed loan was transacted, the plaintiff was in Iran, but despite the political situation in that country which prevented her return to the United States, she was in telephone contact with Afsharnia and gave him permission to make the loan.

The plaintiff claims that on September 18, 1980, Afsharnia, acting on her behalf, loaned $62,500.00 to the debtor. According to the plaintiff, the loan, which was secured by two pieces of real property owned by the debtor in Washington, D.C., was made through Abell Investment Company, Inc. ("Abell"), a broker with which Afsharnia had prior business dealings. Afsharnia had come to this country from Iran and was engaged in a variety of business enterprises, including the ownership of a construction company. He also lent money. That activity brought him in contact with Abell which introduced Afsharnia to the debtor, who had applied to Abell for a loan.

The debtor testified that a "financial consultant" put her in touch with Abell and helped her prepare the financial disclosure statement she furnished to Abell on September 8, 1980.[2]

Afsharnia was shown one of the debtor's properties, and according to his testimony, except for a cursory inspection, he relied entirely on the debtor's financial statement and what he was told by the debtor and Abell when making the loan to the debtor. Afsharnia did not investigate the debtor's credit worthiness, he did not have the debtor's property appraised or review any appraisal, and he did not order a title search or otherwise ascertain the state of the title to the debtor's property. To the contrary, he repeatedly testified that he relied entirely on the debtor and Abell. As he said, his way of doing business was to trust everyone.

Afsharnia transferred $60,000.00 to Abell by a cashier's check dated September 16, 1980 payable to Southeast Title Corporation. On September 18, 1980, the debtor signed a promissory note with recourse in the amount of $62,500.00, payable to Abell.

---

1. Code § 523(a)(2)(B) provides:
   Exceptions to discharge.
     (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
       (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
         (B) use of a statement in writing—
         (i) that is materially false;
         (ii) respecting the debtor's or an insider's financial condition;
         (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

         (iv) that the debtor caused to be made or published with intent to deceive.

2. Plaintiff's Exhibit 1. The debtor testified that she signed a two page financial statement on September 8, 1980. Afsharnia testified that he received the three page financial statement received here as Pl.Ex. 1. The debtor's signature appears on page two of that document. Page three is dated September 6, 1980, is not signed by the debtor, and purports to list real property in Stamford, Connecticut in which the debtor had equity in the amount of $180,000.00.

The note was co-signed by Angelo Wider. The debtor also gave Abell deeds of trust on each of her Washington properties. On that same date, Southeast paid off all liens on the Washington properties except for the first deeds of trust. Shortly thereafter Abell assigned the debtor's deeds of trust and her promissory note to Afsharnia who sometime thereafter assigned them to the plaintiff.

When the debtor defaulted on the note, suit was brought in the plaintiff's name in the Circuit Court for Montgomery County, Maryland. On November 19, 1982, a judgment by default entered against the debtor in the amount of $68,517.54, representing the principal balance due plus costs and fees. This judgment is the subject of the instant proceeding.

### DISCUSSION

The plaintiff argues that the loan was made and the debt incurred because Afsharnia, acting on her behalf, reasonably relied on the debtor's financial statement which was materially false concerning the debtor's financial condition and written or published by the debtor with the intent to deceive.

The debtor contends that the debt challenged by the plaintiff and identified in this proceeding as the judgment debt listed on her April 24, 1986 amendment to Schedule A–3 is of little significance in this litigation because the original debt, alleged by the plaintiff to have been based upon a false financial statement, was merged into the judgment, and the judgment was not based upon a false financial statement. The debtor also denies the allegations of the plaintiff's complaint that her financial statement was materially false, that Afsharnia reasonably relied on it, and that she made or published the statement with the intent to deceive.

■ There is no merit to the debtor's claim that the judgment debt is of little significance in this proceeding because of the application of the merger doctrine. Under that doctrine, once a claim is reduced to judgment, the original claim is merged into

the judgment and a new claim, known as a judgment debt, is created. *Kotsopoulos v. Asturia Shipping Co., S.A., et al.*, 467 F.2d 91, 95 (2d Cir.1972). *See* 46 Am. Jur.2d *Judgments* § 390 (1969). The original claim, however, does not disappear from view under a dischargeability inquiry and analysis, and a bankruptcy court may analyze the nature of state court judgment to determine its essential legal characteristics. *Valente v. Savings Bank of Rockville*, 34 B.R. 362, 364–65 (D.Conn.1983).

> The United States Supreme Court has authorized such an examination by the Bankruptcy Court to scrutinize "merged" claims so as "to determine the essential nature of the liability for purposes of proof and allowance," *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939), and to implement broad federal policies of bankruptcy law. *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924). *Id.*

The facts presented here demonstrate that the debtor was a defendant in the Maryland action, that she was found by that court to have been in debt to the plaintiff on the promissory note identified here, and that a judgment entered against her by default on the debt represented by and calculated from that note. As a result, the underlying debt merged into the judgment, but to hold that this court may not consider the original debt would frustrate the congressional intent of exempting from discharge debts found to be based upon false financial statements.

In many cases, creditors have to institute suit and obtain a judgment in order to collect debts owed to them. It would be anomalous to hold that creditors who sue in state court to collect debts run the risk that judgment debtors will escape liability by using the merger doctrine in bankruptcy court. A creditor who succeeds in reducing a claim to judgment should have his chances of recovery enhanced by that judicial process rather than diminished because the underlying debt, which is vulnerable to a determination of nondischargeability under bankruptcy law, has been replaced by a

judgment that is not susceptible to that challenge. Thus, the debtor's discharge under § 727 includes the debt based on the promissory note, now represented by the judgment, unless that debt is excepted from discharge as a result of this adversary proceeding. The question before this court is whether that underlying debt is nondischargeable under § 523(a)(2)(B).

Although the Rules of Bankruptcy Procedure are silent as to the burden of proof in dischargeability litigation,[3] it has become well settled that the plaintiff must prove each element of § 523(a)(2)(B), *In re Ciampi*, 14 B.R. 441, 442 (Bankr.D.Conn.1981), by clear and convincing evidence, *In re Newmark*, 20 B.R. 842, 853 (Bankr.E.D.N.Y.1982). Moreover, extensive case law and commentary on the subject hold that objections to discharge under § 523 are to be strictly construed against the objecting creditor and liberally in favor of the debtor. *In re Smolarick*, 56 B.R. 720, 722 (Bankr.W.D.Va.1986). *See also Household Finance Corp. v. Danns*, 558 F.2d 114, 116 (2d Cir.1977) (exceptions to discharge [under former Act § 17a(2)] are to be narrowly construed), (*citing Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)); 3 *Collier on Bankruptcy*, § 523.05A at 523–15 (15th ed. 1986). As this court stated in *In re Ciampi, supra*, 14 B.R. at 443:

In its effort to provide debtors with a meaningful fresh start, Congress limited exceptions to discharge to a relatively few categories of debt. This congressional intent is underscored by legislative history and emphasized by sections 523(c) and 523(d) which limit the application and penalize the inappropriate use of section 523(a)(2)(B). It would therefore appear that claims of nondischargeability of debts under section 523(a)(2)(B) must be scrutinized with special care. (Footnote omitted).

–1–

### Materially False Statement

■ The plaintiff claims and must prove that the debtor's financial statement as a whole was materially false, *Matter of Bogstad*, 779 F.2d 370, 373 (7th Cir.1985). It is not sufficient to show that the statement contained factual inaccuracies. *See In re Ostrer*, 393 F.2d 646, 649 (2d Cir.1968). Under § 523(a)(2)(B) and its predecessor, § 17(a)(2), material falsity has been defined as "an important or substantial untruth." *Matter of Bogstad, supra*, 779 F.2d at 375; *In re Magnusson*, 14 B.R. 662, 668 (Bankr.N.D.N.Y.1981). Courts have been aided in the determination of material falsity by considering whether the loan would have been made had the creditor been aware of the debtor's true financial condition. *Matter of Bogstad, supra*, 779 F.2d at 375; *In re Barnacle*, 44 B.R. 50, 54 (Bankr.D.Minn.1984); *In re Denenberg*, 37 B.R. 267, 271 (Bankr.D.Mass.1983).

■ In support of her claim, the plaintiff offered evidence to prove that the financial statement overvalued assets, failed to disclose the full nature and extent of liabilities, and did not reveal that the debtor was in default on the loans securing some or all of her property. The plaintiff specifically argued that the debtor's disclosure of stocks was inflated, that her claim to a $51,000.00 account receivable was suspect, and that she grossly overvalued her Washington real estate holdings. The plaintiff offered further evidence to show that the debtor failed to list all the liens on her Washington and Stamford property.

The debtor has conceded that her disclosure statement was inaccurate insofar as it reported that her GTE common stock had a market value of $21,000.00. The debtor argues, however, that her disclosure statement read as a whole, *see In re Bogstad, supra*, 779 F.2d at 373, would demonstrate that the inaccuracies were not significant, and moreover, they were not made or published with an intent to deceive. According to the debtor's recalculations, after deducting the various undisclosed liens on the Washington property and the entire stated

---

**3.** Rule 4005 provides that, "[a]t trial on a complaint objecting to a *discharge,* the plaintiff has the burden of proving his objection." (Emphasis added).

value of her GTE stock, her net worth was still approximately $206,500.00 (rather than the $278,500 originally reported), more than enough to support an application for a $62,500.00 loan.

Although the plaintiff claimed that the debtor grossly overvalued her Washington property, no evidence was offered to support that contention. Clearly, the mere fact that the property later brought significantly less in forced sales, pursuant to foreclosure proceedings, does not warrant a finding by clear and convincing evidence that the debtor erroneously estimated the market value of that property at the time the financial statement was prepared.

The debtor's argument is persuasive and as such is fatal to the plaintiff's challenge to the dischargeability of the subject debt. The same conclusion is reached on the next contested element of § 523(a)(2)(B).

–2–

### Reasonable Reliance

■ The plaintiff also claims, as she must, that she relied on the truth of the debtor's financial statement, meaning that Afsharnia, acting on the plaintiff's behalf, relied on that statement. Having analyzed the testimony of the witnesses, the exhibits admitted into evidence, and the arguments of counsel, and having assessed the credibility of the witnesses, I am convinced that in entering into the loan transaction Afsharnia relied upon what Abell told him, or more to the point, what Abell showed him, rather than upon the debtor's financial statement. Indeed, it is clear from the evidence that it was Abell who made the loan to the debtor and then transferred it to Afsharnia. The obvious selling points were that in exchange for $60,000.00, Afsharnia received an assignment of the debtor's six month note, co-signed by Angelo Wider, with recourse against Abell, and secured by deeds of trust on the debtor's Washington properties. The $60,000.00 was to be used to remove various liens from the real estate and thereby advance the deeds of trust given to Abell to second position. In the context of those circumstances, it is easier to understand why Afs-

harnia, who testified that his way of doing business was to trust everyone, didn't feel that it was necessary to investigate the debtor's credit.

–3–

Because I find that the debtor's financial statement was not materially false and further that the debtor did not reasonably rely on it, it is unnecessary to consider the other elements of § 523(a)(2)(B). It may be noted, however, that the debtor's testimony and the evidence strongly suggest that she did not knowingly or recklessly prepare a false statement so as to support a finding that she acted fraudulently. *See In re Ostrer, supra,* 393 F.2d at 650; 3 *Collier on Bankruptcy* ¶ 523.09 at 523–62 (15th ed. 1986). If the debtor had intended to deceive, it is likely that she would have included her Stamford, Connecticut property in her net worth calculations, even though the evidence revealed that they were fully encumbered.

For the foregoing reasons, the plaintiff has failed to sustain her burden of proof under § 523(a)(2)(B), and judgment may enter accordingly.