**In re Janet Jean SCHOEFF, Debtor.**

**HOUSEHOLD FINANCE CORP., Plaintiff,**

**v.**

**Janet Jean SCHOEFF, Defendant.**

**Bankruptcy No. 88–11623.**
**Adv. No. 89–1016.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

June 4, 1990.

Wendell L. Ham, Bluffton, Ind., for Defendant.

Stephen E. Lewis, Fort Wayne, Ind., for plaintiff.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court to consider the issues raised by plaintiff's complaint

to determine dischargeability, filed pursuant to 11 U.S.C. § 523(a)(2)(B). The loan in question arises out of the debtor's response to plaintiff's mass mailing campaign. This was part of a special marketing program which plaintiff apparently implemented in order to increase its existing customer base. In this campaign, a selected group of individuals were sent invitations to borrow money. The recipients were preapproved, subject only to the requirement that they disclose a minimum annual income of at least $20,000.00. In order to obtain the loan, all the recipient needed to do was check the appropriate box indicating income, identify their employer by name, address and telephone number, and return the acceptance certificate in the postage-free envelope provided. Anyone who checked the boxes and filled in the blanks was given a loan—all without further ado.

The debtor was offered a household line of credit in the amount of $3,000.00. At the time she received it, the debtor was experiencing financial trouble. Thinking that an influx of capital might help overcome these problems, the debtor elected to act upon plaintiff's willingness to lend her money. She requested and received the maximum loan for which she had been preapproved—$3,000.00. In doing so, she affirmatively represented that her income was $20,000.00 to $30,000.00 per year. She did this by checking the appropriate box on the form. In reality, debtor's income was nowhere near this amount. At best, her annual income was only $9,000.00. She was fully aware of this when she completed the acceptance certificate. She misrepresented her income because of her hope that the loan proceeds would help extricate her from her embarrassing financial situation. They did not and bankruptcy soon followed.

The only issue before the court is whether or not plaintiff's reliance upon debtor's misrepresentation was reasonable. *See* 11 U.S.C. § 523(a)(2)(B)(iii). The court has previously found that all other elements of § 523(a)(2)(B) are satisfied. The burden of proving reasonable reliance rests with the plaintiff. *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1983). It must do so by clear and convincing evidence. *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985).

In order to prevail under § 523(a)(2)(B)(iii) the creditor must prove not only that it actually relied on the debtor's misstatement, but also, that its reliance was reasonable. *In re Martz*, 88 B.R. 663, 673 (Bankr.E.D.Pa.1988). It cannot be denied that the plaintiff actually relied on the debtor's misrepresentation in extending her the $3,000.00 loan. The fact that plaintiff extended credit to the debtor because she checked the appropriate box indicates the misrepresentation played a role in the decision to make the loan. The issue, however, is not one of reliance, per se, but rather whether or not plaintiff's reliance, actual though it may have been, was reasonable. The court concludes that it was not.

Whether or not reliance was reasonable is a factually sensitive inquiry. *In re Mullet*, 817 F.2d 677, 679 (10th Cir.1987); *Bogstad*, 779 F.2d at 373 n. 4; *In re Martin*, 761 F.2d 1163, 1166 (6th Cir.1985). It is measured against an objective standard, which considers the degree of care that would be exercised by a reasonably cautious person in a similar transaction under similar circumstances. *Martz*, 88 B.R. at 673. The inquiry can involve such things as the amount and adequacy of the information given or requested, the nature and circumstances of the loan, the past relationship, if any, between creditor and debtor, the amount of the loan itself, the sophistication of the lender, its normal lending practices and the custom of the industry. *See In re Allen*, 65 B.R. 752, 763 (E.D.Va. 1986); *In re Wolf*, 67 B.R. 844, 850–51 (Bankr.D.Colo.1986).

"Numerous bankruptcy court cases stand for the proposition that a bank must conduct a reasonable investigation as to the accuracy of the debtor's representations." *In re Ward* 857 F.2d 1082, 1084 n. 2 (6th Cir.1988). (citations omitted). Thus, the court should also consider the nature of the information given and the ease with which it can be verified. Because of this, the

most common scenarios where courts question the reasonableness of reliance include the failure "to solicit adequate or sufficient information" and the failure to "verify the accuracy of the information." *In re Howard*, 73 B.R. 694, 705–706 (Bankr.N.D. Ind.1987). Especially where there is no prior relationship between the parties, "where 'minimal investigation and verification almost certainly would have uncovered the falsity of the representations,' a ... debt must be discharged if no such investigation has been performed." *Ward*, 857 F.2d at 1084 (citing *Mullet*, 817 F.2d at 680).

The amount of the loan was relatively small. There was no prior relationship between creditor and debtor; yet, plaintiff sought only the most minimal financial information possible and it did nothing to verify its accuracy. A simple phone call to debtor's employer would have sufficed and plaintiff had the number; it was one of the blanks which had to be filled in. Nonetheless, the only type of review the loan was given was to make certain that the application was completely filled out and that the appropriate box had been checked. Because the right blanks were filled in and the right boxes checked, the loan was approved and a check mailed. Without making any effort to verify debtor's representation of income or her credit worthiness, plaintiff made the loan.

It was plaintiff who made the initial decision to offer credit to the debtor. She did not seek it from them until she had received the certificate indicating that she had already been approved for the loan. The loan was made as a result of an affirmative response to plaintiff's own efforts at self promotion—a mass-mailing campaign, in which any number of people are offered the opportunity to borrow money. No evidence of any kind was presented concerning how the recipients of these solicitations are chosen or what type of demographic criteria must be fulfilled before some computer makes the decision that they are initially eligible to receive the loan and therefore pre-approved. Plaintiff apparently had no information about the debtor and her financial affairs beyond the fact that it somehow knew her name and address.

The court is keenly aware of the tensions that exist within § 523(a)(2)(B). Its requirement of reasonable reliance must not become a vehicle by which the courts, having the benefit of 20/20 hindsight, second guess a creditor's loan policies or the wisdom of its lending decisions. *Matter of Garman*, 643 F.2d 1252, 1258 (7th Cir. 1980); *Kreps*, 700 F.2d at 375–376. At the same time, however, "it is not our business to bail out any lender no matter how recklessly it gives out its money." *Bogstad*, 779 F.2d at 373 n. 4.

It is not this court's desire to countenance fraud. Neither does the court desire to encourage parties to allow themselves to be defrauded.

> If a party blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived ... *Plymale v. Upright*, 419 N.E.2d 756, 761 (Ind.App.1981), (quoting *Frenzel v. Miller*, 37 Ind. 1, 17 (1871)).

In other words, a litigant cannot consciously place itself in the position where it can become the victim of fraud and then, once a fraud has been perpetrated upon it, complain that it has been ill-used.

" 'Misplaced trust' is insufficient for nondischargeability." *Ward*, 857 F.2d at 1084. "[A] man is bound to use ordinary care and diligence to guard against fraud and imposition, and ... if he fails to do so, he cannot obtain relief from the courts." *Wood v. Wack*, 31 Ind.App. 252, 67 N.E. 562, 564 (1903). This "legal obligation that a person use the common sense and judgment of which he is possessed is a practical limitation on the actionability of various representations." *Plymale*, 419 N.E.2d at 762. Thus, "a lender must investigate creditworthiness and ferret out ordinary credit information." *Ward*, 857 F.2d at 1084. It may not " 'assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it.' " *Bogstad*, 779 F.2d at 373 n. 4. (quoting *In re Blatz*, 37 B.R. 401, 404–405 (Bankr.E.D. Wis.1984).

To find that plaintiff's reliance was reasonable is to encourage reckless irresponsi-

bility, by allowing plaintiff to willingly place itself in the position where it can be easily defrauded. We would be giving it the best of both worlds. If the loan is repaid according to its terms, plaintiff wins; it has lost nothing and has earned interest on its money. If, on the other hand, it becomes the victim of a desperate debtor who, drowning in debt and looking for any type of life raft to help it survive, misrepresents its income, plaintiff also wins. It then comes into this court, full of self-righteous indignation about the wrong that has been perpetrated upon it, to except the debt from the scope of the debtor's discharge. Having done so, plaintiff could then chase the debtor and, at least in theory, eventually secure full payment of the amounts due it.

Plaintiff blindly goes out into the marketplace apparently willing to extend credit to any and all comers. Plaintiff must know that at least some of the recipients of its mailings will be less than credit-worthy and, of these, some may be less than honest. Nevertheless, as long as the appropriate box is checked and all the blanks filled in, plaintiff makes a loan. Presumably, the risks it takes by doing business in this fashion are factored into the finance charges it receives. *Ward,* 857 F.2d at 1085.

Plaintiff voluntarily took a calculated risk with its unsolicited invitation to a complete stranger to borrow money. It did so without taking the simplest and most elementary precautions to protect itself. It cannot complain because the debt is being discharged. *Ward,* 857 F.2d at 1085. "Although the court should protect lenders from unscrupulous debtors, it is not our business to bail out any lender no matter how recklessly it gives out its money." *Bogstad,* 779 F.2d at 373 n. 4.

Plaintiff's reliance on the debtor's misrepresentation was not reasonable. Plaintiff has failed to carry its burden of proof under 11 U.S.C. § 523(a)(2)(B)(iii).

A judgment of dismissal will be entered.