**REGENCY NATIONAL
BANK, Plaintiff,**

v.

**William R. BLATZ, Defendant.**

**No. 86–C–680.**

United States District Court,
E.D. Wisconsin.

Nov. 4, 1986.

See also, Bkrtcy., 58 B.R. 112.

Richard Cuellar, Ludwig & Shlimovitz, Milwaukee, Wis., for defendant.

### DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

On August 26, 1982, William and Mary Jo Blatz filed a petition for relief under chapter 11 of the bankruptcy code. In so filing, the Blatzs sought, among other things, to be discharged of their various financial obligations. Shortly after the Blatz petition was filed, one of William Blatz's creditors, Regency National Bank, commenced an adversary proceeding in bankruptcy court to bar discharge of $51,-600, together with accumulated interest, due and owing from Mr. Blatz. The bank's claim of nondischargeability was premised upon 11 U.S.C. Sec. 523(a)(2)(B) which precludes discharge of debts obtained through the use of a false financial statement.

On February 7, 1984, 37 B.R. 401, Bankruptcy Judge James E. Shapiro entered a written decision determining that the Blatz debt to Regency National Bank was nondischargeable in the amount of $30,843. Mr. Blatz appealed the decision to the district court. On June 4, 1986, another branch of the district court remanded this action to Judge Shapiro for a clarification of the standard of proof applied in arriving at his decision. On June 19, 1986, Judge Shapiro issued a "supplemental decision and order" in which he explicitly stated that the bankruptcy court was satisfied "that all of the elements necessary to sustain an exception under sec. 523(a)(2)(B) have been established by clear and convincing evidence."

Subsequent to the entry of the bankruptcy court's supplemental decision and order, Mr. Blatz timely filed another appeal which has been assigned to this branch of the district court. In presenting their respective positions, both parties have relied on the briefs submitted in the first appeal of this matter. Upon reviewing these briefs and the entire record on appeal, I affirm the bankruptcy court's determination that $30,843 of debtor's total obligation to Re-

James Grodin, Milwaukee, Wis., for plaintiff.

gency National Bank is nondischargeable under 11 U.S.C. sec. 523(a)(2)(B).

### Background

Greg Hoppe, a business associate of William Blatz, hoped to borrow funds from the Regency National Bank for use in a new business venture. Mr. Hoppe proposed that William Blatz sign the proposed loan note as guarantor. Despite this offer of a guarantee, the bank denied Mr. Hoppe's application because Mr. Hoppe was already delinquent in the amount of $21,600 on an existing loan from the bank.

After this rejection, Mr. Hoppe introduced Mr. Blatz to Laurence Stanul, the bank's chief lending officer. Mr. Stanul met with Mr. Blatz in May or June 1982; Stanul was "favorably impressed." Mr. Stanul was also receptive to Mr. Blatz's offer to obtain a direct loan from the bank in the amount of $51,600. This loan amount represented $30,000 in cash, together with responsibility for the delinquent Greg Hoppe obligation of $21,600.

At the bank's request, Mr. Blatz submitted a financial statement. The statement, dated May 20, 1982, reflected a positive net worth in the amount of $1,448,750. Mr. Stanul testified that he found this amount to be satisfactory to support a loan of $51,600 by discounting the net worth figure by 50 percent. According to Mr. Stanul, even a resulting positive net worth of approximately $750,000 could support the proposed loan amount. Mr. Blatz told the bank that he expected to pay off the loan through funds he anticipated receiving in compensation for his role in obtaining investors in an apartment development in Houston.

Before consummating the loan agreement with Mr. Blatz, the bank sought reports on Mr. Blatz's involvement with the Houston project. It also sought independent corroboration of the financial statement by contacting a credit bureau listed on the statement. All reports were favorable, and the bank agreed to extend the $51,600 to William Blatz. On June 30, 1982, Blatz signed a single payment, unsecured promissory note for $51,600. The note was payable in 120 days with interest at the rate of 18 percent.

Before the note became due, Mr. Blatz filed for bankruptcy relief. The Blatzs' bankruptcy petition schedules, dated August 26, 1982, just three months after the financial statement submitted to Regency National Bank, reflected a negative net worth in the amount of $2,469,706.

### Analysis

When a district court is called upon to review a decision of the bankruptcy court, the bankruptcy court's findings of fact must be affirmed unless they are clearly erroneous. Rule 8013, Federal Rules of Bankruptcy Procedure. The bankruptcy court's conclusions of law, by contrast, can be reviewed de novo. Id. The narrow, clearly erroneous, standard of review applies to my entire review of the instant case because the disputed findings of the bankruptcy court are all findings of fact.

■ 11 U.S.C. Sec. 523(a)(2)(B) requires that all of the following factors be established before a court may except an obligation from discharge: 1) there must be the existence of a statement in writing; 2) such writing must be materially false; 3) such writing must concern the debtor's financial condition; 4) it must be a statement upon which the creditor reasonably relied; 5) the statement was made with intent to deceive. A party seeking to except a debt from discharge must prove each element by clear and convincing evidence. See In re Perez, 52 B.R. 824, 827 (Bankr.W.D.Ky. 1985).

It is not disputed that this action involves a written statement which concerns the debtor's financial condition. Thus, there is no dispute regarding these findings. As to the other three factors, Judge Shapiro first determined that the Blatz financial statement of May 20, 1982, was materially false. He arrived at this conclusion by comparing analogous portions of the Blatz bankruptcy schedules and May 20 financial statement. Aside from the nearly four million dollar

discrepancy between the net worths reflected on these two purported expressions of the Blatz financial condition, there are at least five discrepancies each over $100,000 between certain accounts listed on both sets of statements. Judge Shapiro, after considering Mr. Blatz's undisputed sophistication regarding financial matters, the relatively short amount of time between the two statements, and the magnitude of the discrepancies, found sufficient evidence of material falsity and intent to deceive.

Mr. Blatz contends that although there are clearly discrepancies, the bankruptcy court failed adequately to establish that the financial statement was, in fact, inaccurate as of May 20, 1982. Moreover, Mr. Blatz asserts that the record regarding the bank's successful efforts to verify the financial statement support the conclusion that the statement was accurate when it was submitted.

■ While it is true that the bank received what it, at one time, considered adequate information on which to extend a loan, I am not persuaded that such research irrebuttably established the veracity of the Blatz financial statement. The huge discrepancy in net worth gives rise to an inference of material falsity. *Cf. Gonzales v. Aetna Financing Co.*, 86 Nev. 271, 468 P.2d 15 (1970) (Difference of $100–$300 between financing statement and bankruptcy schedules deemed immaterial). Determination of material falsity may be made by consideration of direct evidence *or* by inference. *In re Golden*, 54 B.R. 957 (Bankr.D.Mass.1985). The possibility that Mr. Blatz was able to muster credit references is not sufficient to rebut this inference. There is no evidence that the bank's contacts verified the actual numbers on the financial statement; the record simply indicates that they told the bank that Mr. Blatz was a good credit risk.

■ Mr. Blatz admitted that there was at least one inaccurate figure in the financial statement he submitted to Regency National. The financial statement reflected assets valued at $120,000 and attributed to Mr. Blatz which were actually assets belonging to his wife. Mrs. Blatz was not an obligor on the bank loan, and the bank was not seeking information regarding her financial status. Falsely including her assets was a false statement of financial condition. Was it materially false? I think so. Misrepresentation of ownership of assets is a material falsity for purposes of Sec. 523 exception to dischargeability. *In re Winfree*, 34 B.R. 879 (Bankr.M.D.Tenn.1983). Considered along with the other discrepancies identified by Judge Shapiro's comparison, I am amply satisfied that the bankruptcy court's finding on this factor is not clearly erroneous.

■ I am also persuaded that the bankruptcy court's finding of fact regarding Mr. Blatz's intent to deceive is not clearly erroneous. Such fraudulent intent may be inferred logically from the "totality of the circumstances." *In re Schlichtman*, 6 B.R. 281 (Bankr.D.Mass.1980). *See also In re Garman*, 643 F.2d 1252, 1260 (7th Cir. 1980) (finding inference of intent to deceive by "inherent incredibility of [debtor's testimony, ... continuing omissions in the context of the representations of completeness in the financial statements); *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.1979) (finding misstatements "grossly reckless at a minimum" and inferring, therefore, intent to deceive).

■ Mr. Blatz contends that a "totality of the circumstances" analysis requires the court to consider the creditor's conduct, in addition to the debtor's, in order to determine intent. I disagree that the creditor's conduct is in any way relevant to the element of intent to deceive, and find the lower court's analysis not clearly erroneous. I, therefore, affirm the bankruptcy court on this element as well.

■ The bank's conduct is, however, clearly relevant to the final element of Sec. 523(a)(2)(B) that I must consider: the creditor's reasonable reliance factor. Again, I am fully satisfied with Judge Shapiro's careful and precise examination on this point. The bankruptcy court correctly pointed out that a "more thorough and

prudent investigation" could have been conducted by the bank in the Blatz case. However, the court should not base its decision regarding the existence of reasonable reliance on what kind of investigation it would have undertaken. The court must determine whether the investigation actually undertaken gave rise to reasonable reliance on the part of the bank. I find that the bankruptcy court's determination on this point is also not clearly erroneous; the bank reasonably relied on the debtor's false financial statement in extending the loan.

A number of factors support this conclusion. For instance, the bank did not blindly rely on the submitted Blatz financial statement; Mr. Stanul rather generously discounted the net worth that was reflected on the statement. He also contacted three other banks and a credit union in order to get an independent reading on William Blatz. Such independent research, alone, indicates reasonable reliance. *Cf. In re Bogstad*, 779 F.2d 370, 372–73 n. 4 (7th Cir.1985).

 Thus, some efforts were made to corroborate the financial statement. Moreover, the financial statement itself requested sufficient information upon which the bank could make a reasoned decision. The bank is not required to assume that a prospective borrower is supplying false information and proceed accordingly in order to be deemed to have "reasonably relied." *In re Garman, supra*, 643 F.2d at 1260.

As to the Hoppe delinquency, there is no doubt that the bank was attracted by this offer and may have partially relied on it to extend credit to Mr. Blatz. However, as the bankruptcy court correctly noted, there is no requirement that a creditor rely exclusively on a false financial statement before nondischargeability is allowed. *In re Garman, supra*, 643 F.2d 1252 n. 1. There was at least partial reliance on the financial statement in this case. This partial reliance is enough to satisfy the reliance element of sec. 523(a)(2)(B). *Id.*

Nevertheless, the bankruptcy judge determined that only the $30,000 cash loan was consummated in actual reliance on the financial statement. While it is possible that, in fact, the entire loan was issued in partial reasonable reliance on the false financial statement, I do not find Judge Shapiro's finding on this point to be clearly erroneous.

Accordingly, I conclude that the bankruptcy court's findings on each of the requisite elements of 11 U.S.C. sec. 523(a)(2)(B) are not clearly erroneous.

Therefore, IT IS ORDERED that the decision of the bankruptcy court filed February 7, 1984, be and hereby is affirmed.