In re James F. BONNETT, Linda J. Bonnett, Debtors.

The NATIONAL BANK OF PETERSBURG, a National Banking Association of Petersburg, Illinois, and the Illinois National Bank of Springfield, a National Banking Association of Springfield, Illinois, Plaintiffs,

v.

James F. BONNETT, Defendant.

No. 85–3197.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 17, 1987.
On Motion for Rehearing
June 24, 1987.

**716**

Brownfield & Tucker, Havana, Ill., Charles K. Smith, Petersburg, Ill., Jerry C. Bonnett, Phoenix, Ariz., for plaintiffs.

Thomas Schanzle-Haskins, Springfield, Ill., for defendant.

## OPINION AND ORDER

MILLS, District Judge:

A bankruptcy appeal.

And a question of turkeys.

The debtor appeals from the decision of the bankruptcy court which held that a $427,000 debt owed to The National Bank of Petersburg and the Illinois National Bank was nondischargeable in bankruptcy.

The finding of nondischargeability was based upon 11 U.S.C. § 523(a)(2)(B) which denies discharge to debts which were obtained through the use of a false financial statement.

The issue raised on appeal is whether the creditor met his burden of proving by clear and convincing evidence the existence of all four statutory elements necessary to grant an exception to discharge. We hold that the creditor did not.

We reverse.

### Background

The debtor, James Bonnett (Bonnett), was the general manager and president of Bonnett's Turkey Hatchery in Havana, Illinois, from 1969 until 1982. In 1982, the hatchery and Bonnett filed a petition in bankruptcy.

The issue in this case concerns a loan transaction between the hatchery and The National Bank of Petersburg (NBP) and Illinois National Bank (INB). Bonnett is personally liable as he guaranteed repayment of the loan.

In December of 1980, Bonnett on behalf of the hatchery applied for a $500,000 loan with NBP. In connection with the loan application, NBP received an unaudited financial statement from the hatchery which purported to show the financial condition of the hatchery as it existed at that time. Of particular importance was the figure listing the fair market value of the breeding stock. This figure was listed as $914,340. Another column on the financial statement listed the historical cost of the breeder stock. The historical cost figure was identical to the amount listed as the fair market value. An end note to the financial statement revealed that the fair market value was computed as the accumulated cost of the hens and toms.

Because the amount of the loan exceeded the lending limits of NBP, the INB was asked to participate in the loan in the amount of $250,000.

Representatives of the INB and NBP examined the unaudited statement. These same representatives went to the hatchery to observe the operation of the business. At this time, Alex M. McPherson of the INB requested an audited financial statement from Bonnett. An audited statement was submitted and examined by McPherson and Phil Deverman of the NBP.

The audited statement valued the breeding stock at $963,690, although it was not specifically labeled as the fair market value of the stock. The end note again stated that the value was calculated according to the accumulated cost of the hens and toms. The value of the breeding stock was of prime importance to the banks because it was to be used to collateralize the loans.

The main factual dispute in this case concerns the meaning which should be attached to the phrase "fair market value." On both the unaudited and the audited statements, the terms "value" and "fair market value" are defined in the end notes

as the accumulated costs of the hens and toms.

Nevertheless, the testimony reveals that the meaning attached to fair market value by the parties had many variations. McPherson of the INB testified that he thought fair market value would equal an amount which the breeding stock would yield upon a sale to a willing buyer of the stock. Deverman of the NBP testified that he thought the fair market value meant the amount which could be realized from a forced sale of the stock (e.g., the "salvage value"). On the other hand, both bankers testified that they had read both the unaudited and audited financial statement including the notes which explained the computation of fair market value.

Looking at the other side of the transaction, Mr. Leon Jones, the accountant who prepared the statements, testified that normally the fair market value would be less than the historical cost of the turkeys. He set the actual fair market value of the turkeys at $400,000.

Bonnett's trial testimony indicated that he believed the $914,340 figure was a fair estimate of the fair market value. However, when previously asked in interrogatories to compute the fair market value of the turkeys using current market prices plus the premium price allotted for breeders, Bonnett arrived at a figure of $618,540. The bankruptcy judge found that Bonnett's testimony at trial was not credible.

On the basis of these facts, we must determine whether the bankruptcy court correctly found that the creditors proved by clear and convincing evidence that all of the elements necessary to support an exception to discharge were met.

### Law and Analysis
#### A.

A reviewing court must accept the bankruptcy court's findings of fact unless clearly erroneous. On the other hand, conclusions of law are reviewed *de novo*. *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986).

When the case involves a mixed question of fact and law, all factual determinations are reviewed under the clearly erroneous standard. Application of the facts to legal standards or definitions are reviewed *de novo*. *Id.* This case involves the application of facts to the legal standards which provide for the exception to discharge under 11 U.S.C. § 523(a)(2)(B). We have no quarrel with the findings of fact in this case. Thus, our review is limited to the proper application of the facts to the standards delineated in 11 U.S.C. § 523(a)(2)(B) and our review is *de novo*.

#### B.

An exception to the discharge of a debt will be granted if the creditor can prove by clear and convincing evidence the existence of four factors: (1) the existence of a statement in writing concerning the debtor's financial condition, (2) which is materially false, (3) and made with intent to deceive, (4) and upon which the creditor reasonably relied. 11 U.S.C. § 523(a)(2)(B). *See Regency Nat'l Bank v. Blatz*, 67 B.R. 88, 90 (E.D.Wis.1986).

It is the burden of the party seeking the exception to discharge to prove these factors by clear and convincing evidence. *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985).

The Bankruptcy Code favors discharge and the clear and convincing burden of proof standard creates a greater burden of proof than the normal preponderance of the evidence standard. *In re Delano*, 50 B.R. 613, 617 (Bankr.D.Mass.1985).

Here, the bankruptcy court held that the creditor banks met this burden as to all the elements and thus found the debt to be nondischargeable in bankruptcy.

The debtor-appellant challenges the bankruptcy court's finding as to the last three elements listed above.

Initially, we note that the statute provides four necessary conditions which must be met if the debt is to be declared nondischargeable. Failure of any one condition must result in a determination that the exception to discharge does not apply.

■ Although the issues of the material falsity of the statement and the debtor's intent to deceive are raised, we believe the heart of this case lies at whether the creditor reasonably relied upon the financial statement. Since we reach a different conclusion than the bankruptcy court on the reasonable reliance issue and reverse on that basis, we decline to directly address the issues of material falsity and intent to deceive.[1]

## C.

The bankruptcy judge recognized that the question of reasonable reliance was close. The bankruptcy court concluded that the reliance was indeed reasonable. The bankruptcy court grounded its holding on the premise that by reading the audited and unaudited statement together, the banks could reasonably conclude that there was nothing substantially incorrect about the figure given as the fair market value of the turkeys. Thus, the banks reasonably relied on the figure given in the statement.

Our reading of the case law, however, leads us to the conclusion that more was required of the banks to establish reasonable reliance.

The parties have voiced an initial disagreement over the continuing viability of decisions decided under the former version of § 523(a)(2)(B). The Bankruptcy Act's predecessor to ·section 523(a)(2)(B) was § 17(a)(2). Section 17(a)(2) did not specifically contain language requiring "reasonable" reliance.

In *Matter of Garman,* 643 F.2d 1252, 1256 (7th Cir.1980), a case decided under the old section 17(a)(2), the Seventh Circuit held that a creditor's reasonableness could be circumstantial evidence of actual reliance. The court also held that a creditor's reliance could be so unreasonable as to cease to be reliance at all. The *Garman* court reserved the question of whether its analysis would be the same under new section 523(a)(2)(B). *Id.* at 1255–56.

Debtor argues that *Garman* did not survive the enactment of § 523(a)(2)(B). We hesitate to agree with that broad of a statement. Nevertheless, the fact that we accept *Garman* as a generally sound statement of the law does not alter our conclusion that the creditor's reliance was unreasonable in this case.

*In re Kreps* answered the question reserved by the court in *Garman.* 700 F.2d 372 (7th Cir.1983). *Kreps* held that the reasonableness requirement of the new section was intended as a codification of cases which had construed the reliance element in § 17(a)(2) as containing a reasonableness component. *Id.* at 376.

However, *Kreps* indicated that the judicial gloss which was subsequently adopted by § 523(a)(2)(B) is two-pronged. The first prong discussed in *Garman* refers to the finding of actual reliance. The second prong holds that once actual reliance on the financial document is found, that reliance on the financial document must be reasonable. *Id.* at 375. This proposition does not originate from *Graman;* it comes from *Carini v. Matera,* 592 F.2d 378, 381 (7th Cir.1979).

*Garman* as such does not stand for the proposition that reasonableness is only relevant as circumstantial proof of actual reliance. Or if it did, *Kreps* indicates other-

---

1. We note in passing that we believe the bankruptcy judge correctly found that the creditors cleared the hurdle of showing a material falsehood and an intent to deceive on the part of the debtor. The testimony reveals that both the accountant and the debtor knew that the actual value of the breeder stock was less than the listed figure. Attaching the different label of accumulated cost does not change the fact that they failed to label accurately the actual fair market value. Failure to divulge the true value of assets pledged is a material falsehood. *In re Biedenharn,* 30 B.R. 342 (Bankr.W.D.La.1983). Further, intent to deceive can be found when

the debtor has seen the statement and knows or should know of its falsity. *In re Coughlin,* 27 B.R. 632, 636 (1st Cir.BAP 1983).

Of course, these elements of the test focus on the conduct of the debtor and what he knew or should have known. The reasonable reliance element focuses on the conduct of the creditor. Thus, even if it is obvious that the debtor has omitted or mistated material information, this does not mean a creditor can reasonably rely on such information. In fact, it would seem that the more obvious the omission or falsehood, the more difficult it would be to find reasonable reliance.

wise. Thus, we find it difficult to read *Garman* as requiring only actual reliance when *Kreps* speaks directly of two forms of reliance. *Kreps, supra,* at 375. In addition, we note that to hold otherwise would result in reading the reasonableness language out of the Code.

### D.

With this background in mind, we must decide if the creditor banks reasonably relied on the financial statement.

Whether reliance on a particular financial statement is reasonable depends upon the facts of the particular loan transaction. *Matter of Bogstad,* 779 F.2d 370, 372–73 n. 4 (7th Cir.1985).

We recognize that both *Garman* and *Kreps* teach us that the courts should refrain from "undertak[ing] a subjective evaluation and judgment of the creditor's lending policies and practices." *Kreps, supra,* at 376.

At the same time, our inquiry necessarily focuses on the conduct of the creditor and the creditor cannot adopt the position of the commercial ostrich and shield itself from known facts concerning the transaction. *Bogstad, supra,* at 372–73 n. 4 (*citing In re Blatz,* 37 B.R. 401, 404–05 (Bankr. E.D.Wis.1984), *aff'd sub nom Regency Nat'l Bank v. Blatz,* 67 B.R. 88 (E.D.Wis. 1986); *In re Yeiser,* 2 B.R. 98, 101 (Bankr. M.D.Tenn.1979)).

Reasonableness is determined on a case by case basis by striking a balance between the conflicting policies mentioned above. While the Seventh Circuit has spelled out the general guidelines, it has not had the occasion to speak as to what specifically constitutes unreasonable reliance on the part of a creditor.

However, we have found cases from other jurisdictions which address what type of conduct will be deemed unreasonable. These cases summarize four situations where the creditor's reliance on the financial statement is unreasonable:

1. Where the creditor knows at the outset the financial statement is not accurate.

2. Where the financial statement does not contain sufficient information to present an accurate portrait of the debtor's financial condition for credit analysis.

3. Where the creditor's own investigation reveals the likelihood that the debtor's financial statement is false or incomplete.

4. Where the creditor fails to independently verify any information contained on the financial statement.

*In re Harms,* 53 B.R. 134, 140–41 (Bankr.D. Minn.1985) (citations omitted). *See also In re Patch,* 24 B.R. 563, 566 (D.Md.1982).

Although the Seventh Circuit has never explicitly approved the use of these four factors in deciding the unreasonableness of a creditor's reliance, the Court has hinted at the fact that these factors are relevant to the inquiry.

In *Matter of Bogstad,* the Court of Appeals discussed the question of reasonable reliance. We do recognize that the statement from the Court in this case was dicta as the decision was based on the lack of material falsity of the statement rather than the creditor's reasonable reliance. Nevertheless, we find this case instructive on the question before us. 779 F.2d 370, 372–73 n. 4.

*Bogstad* recognized that when no ongoing business relationship exists between the creditor and debtor, there may be some duty imposed on the creditor to verify information on the financial statement. This duty becomes clear when the values at issue are speculative. *Id.*

In the case at bar, both creditors agree that the fair market value of the breeder stock was the key figure in determining whether to approve the loan. McPherson and Deverman testified that they read both the unaudited and audited financial statement including the end notes. The end notes stated that the fair market value was equal to the accumulated cost of the turkeys. Yet, each banker testified that he understood fair market value to mean an entirely different thing. Deverman thought it meant the salvage value of

the flock upon liquidation. McPherson thought it meant an amount which the birds could be sold to another breeder.

Hence, the creditor's own testimony reveals that the term "fair market value" is subject to differing interpretations. Nevertheless, no independent verification of the meaning of that term was attempted. The fact that the financial statement gave a definition at odds with the bankers' own definition should have raised a red flag that further inquiry into the derivation of the figure was necessary.

When information exists on the financial statement which indicates that the facts given may be false or misleading, reliance without further inquiry has been held to be unreasonable. *In re Delano*, 50 B.R. 613, 619 (Bankr.D.Mass.1985) (*citing In re Biedenharn*, 30 B.R. 342, 345 (Bankr.W.D. La.1983); *Matter of Granovetter*, 29 B.R. 631, 640 (Bankr.E.D.N.Y.1983)).

Particularly instructive is *In re Delano*. In *Delano*, an accountant provided a letter to the creditor which discussed certain omissions on the financial statement which could affect the conclusions drawn from that statement. The creditor conducted no further inquiry despite his reading of the accountant's letter. The court held that his reliance on the statement was not reasonable in light of the creditor's disregard of the accountant's letter.

Here, the accountant's end notes raised the same type of red flag which was raised in *Delano*. As was true in *Delano*, nothing in the record before us shows any additional inquiry on the part of the creditors after they were confronted with the potentially crucial information provided by the accountant's explanation. We cannot find that the creditor's reliance was reasonable given these facts.

We do not hold that independent verification of a financial statement is necessary in every instance. *Cf. Harms, supra* at 140.

However, when there is no previous ongoing business relationship between the parties and the information on the financial statement would lead a reasonable person to believe that the statement may be ambiguous or suspect, additional inquiry is necessary.[2]

For all the foregoing reasons, the decision of the bankruptcy court is reversed. The debt is held to be dischargeable in bankruptcy.

## ORDER ON MOTION FOR REHEARING

This case is before the Court on Plaintiffs' motion for rehearing filed pursuant to Fed.R.Bankr.P. 8015. Although we deny Plaintiffs' motion for rehearing, we do believe that further discussion is necessary to clarify our previous opinion and order.

█ Plaintiffs argue on rehearing that in reviewing the decision of the bankruptcy court, this Court erred in applying a *de novo* standard of review to the question of whether the creditor's reliance was reasonable as defined in § 523(a)(2)(B) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(B) (Supp. III 1985).

As we noted in our opinion and order, findings of fact made by the bankruptcy court must be upheld unless clearly erroneous, while conclusions of law are subject to a *de novo* review. That much is clear. *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986).

The question raised is whether the bankruptcy court's decision on the reasonable reliance issue should be characterized as a finding of fact or a conclusion of law. Plaintiff correctly notes that one case within our circuit has (implicitly at least) applied the clearly erroneous standard to the question of reasonable reliance under § 523(a)(2)(B). *In re Kimzey*, 761 F.2d 421 (7th Cir.1985). Other courts have somewhat reflexively followed this lead without

---

**2.** *Regency Nat'l Bank v. Blatz*, 67 B.R. 88 (E.D. Wis.1986), is distinguishable on its facts. In *Blatz*, the bank took additional independent steps to corroborate the financial statement. These steps included contacting three other banks and a credit union to get an independent credit rating. *Id.* at 92. Further, there was some ongoing business relationship between the debtor and creditor. Finally, no "red flags" existed on the financial statement which would indicate that it was inherently ambiguous or misleading.

lengthy explanation of their reasons for doing so. *See, e.g., Regency Nat'l Bank v. Blatz,* 67 B.R. 88, 90 (E.D.Wis.1986).

We do not believe *Kimzey* compels the conclusion that the *de novo* standard of review is inapplicable to this particular question. In our view, the characterization of a certain finding of the bankruptcy court as factual or legal involves more than a mechanical labeling process. In other words, it is not enough to say that all issues arising under section "x" of the Code are factual questions and all questions arising under section "y" are legal questions. In some instances there may exist some overlap between the findings of fact and conclusions of law. Thus, we do not think that we are bound by *Kimzey* to review the question before us under a clearly erroneous standard.

In discussing the "vexing nature" of the distinction between findings of fact and conclusions of law, the Supreme Court has expressly stated that "Rule 52(a) does not inhibit an appellate court's power to correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law." *Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 501, 104 S.Ct. 1949, 1960, 80 L.Ed.2d 502 (1984).

The opinion of the bankruptcy court illustrates why in this instance the question of reasonable reliance raises a legal question. The bankruptcy court frames its resolution of the issue as:

> The remaining requirement of the Code, reasonable reliance, is the most difficult: Was there reasonable reliance by the banks on the unaudited financial statement? The Court cannot find case law directly on point on the reasonableness of the reliance and hence, must depend entirely upon its own interpretation of the facts by virtue of having seen and heard witnesses and read exhibits.

The bankruptcy court then concluded that the reliance was reasonable. The language of the bankruptcy court's opinion acknowledges that it did not consider the legal parameters surrounding the finding of reasonable reliance. This is where we believe the error took place. Accepting the facts and testimony as the bankruptcy court found them, this Court found that the developing case law, left uncovered by the bankruptcy court, indicated that the reliance in this case could not be found to be reasonable as a matter of law. Hence, on this narrow legal question, we applied a *de novo* review.

Thus, even if *Kimzey* was correct in labeling reasonable reliance as a question of fact under the circumstances of that case, we find that the error in this case was due to an underlying misunderstanding of the governing law concerning the question of reasonable reliance.

*Ergo,* we properly reviewed the bankruptcy court's resolution of the issue *de novo.*

Plaintiffs' motion for rehearing is DENIED.